UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x
STEVEN DOMINGUEZ,

                      Plaintiff

-against-
                                  SECOND
                                  AMENDED COMPLAINT AND
                                  JURY DEMAND

THE CITY OF NEW YORK and POLICE        No. 21-CV-02302 (KPF)
OFFICERS JOSEPH BATTISTA, DYLAN
LYNCH, PATRICK LYNCH,
EVAN NIELSEN, and PATRICK GRANEY,

                      Defendants,
_____x

## PRELIMINARY STATEMENT

1. This is an action for monetary damages (compensatory and punitive) against THE CITY OF NEW YORK ("The City" or "City of New York") and Police Officers JOSEPH BATTISTA, DYLAN LYNCH, PATRICK LYNCH, EVAN NIELSEN, and PATRICK GRANEY (collectively, the "Individual Defendants") arising out of a brutal assault on Plaintiff STEVEN DOMINGUEZ at a New Year's Eve celebration.

2. Plaintiff was slashed with a knife by an unknown assailant after a fight broke out at a New Year's Eve party.

3. Instead of assisting Plaintiff or detaining the assailant who was still present at the party, the Individual Defendants verbally berated Plaintiff and then viciously assaulted him, causing significant and permanent physical, emotional, and psychological injury.

4. The Individual Defendants, acting under the color of state law, intentionally and willfully subjected plaintiff to, *inter alia*, false arrest, false imprisonment and detention, assault and battery, use of excessive force, and denial of the right to a fair trial, for acts of which plaintiff was innocent. This unconstitutional and unreasonable seizure of the plaintiff and his property was in violation of plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION

5. This action is brought under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §§ 1983, 1985 and 1988 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

6. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over plaintiff's state law claims because these claims closely relate to the constitutional claims, having arisen out of a common nucleus of operative facts, such that all claims form part of the same case or controversy.

7. Venue is laid within the United States District Court for the Southern District of New York in that Plaintiff resides in Manhattan, New York, at least one Defendant resides and does business within the boundaries of the Southern District of New York, and Defendants are residents of the State of New York.

## PARTIES

8. Plaintiff Steven Dominguez at all times relevant hereto is a resident of Manhattan, New York.

9. Defendant City of New York is at all times relevant hereto a municipal corporation duly organized and existing under the laws, statutes, and charters of the State of New York.

10. The New York Police Department ("NYPD") is at all times relevant hereto an agency of Defendant City of New York.

11. Defendants Joseph Battista and Dylan Lynch, at all times relevant to these allegations, were employees of Defendant City of New York, employed as police officers with the NYPD.

12. Defendant Patrick Lynch, at all times relevant to these allegations, was an employee of Defendant City of New York, employed as a Sergeant with the NYPD.

13. Defendants Evan Nielsen and Patrick Graney, at all times relevant to these allegations, were employees of Defendant City of New York, employed as detectives with the NYPD.

14. At all times mentioned herein, the Individual Defendants were acting under color of state and local law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City of New York and the State of New York.

15. All Individual Defendants identified in this Complaint are so named in their individual and official capacity as employees of Defendant City of New York. The Individual Defendants undertook each and all of the acts alleged in this Complaint under cover and pretense of the statutes and laws of the State of New

York, and by virtue of his authority as police officers and employees of Defendant City of New York.

16. As a result of the foregoing, Defendant City of New York is liable for the Individual Defendants' acts under the doctrine of respondeat superior.

## NOTICE OF CLAIM

17. Within 90 days of the occurrence of the incident, Plaintiff filed a written Notice of Claim with the City of New York. This matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

18. On the evening of December 31, 2019, Dominguez attended a New Year's Eve celebration at a private event space in Brooklyn, New York.

19. Dominguez went to the celebration with his girlfriend, his infant daughter, and three friends.

20. Shortly after attendees rang in the New Year, a scuffle broke out at the event.

21. Dominguez, along with his girlfriend, daughter, and friends attempted to leave the venue in order to avoid being caught up in the fight.

22. As Dominguez was leaving, someone came up to him and slashed his face with a knife.

23. Dominguez does not know the identity of his attacker or why he was slashed. Dominguez had never seen the attacker before.

24. The attack left a large gash on Dominguez's right cheek.

25. Fortunately for Dominguez, a registered nurse was at the party and she tended to his injury until the police and ambulance arrived.

26. When the police arrived, Dominguez's girlfriend and one of his friends identified Dominguez's attacker in the crowd of onlookers. However, the police did not even question the attacker, let alone arrest him. In full view of the police, the attacker got in a car and drove away.

27. Instead of questioning Dominguez's attacker, the police, including Defendants Battista, Dylan Lynch, Patrick Lynch, Nielsen, and Graney aggressively questioned Dominguez even though Dominguez was lying on the ground, bleeding from his head, covered in blood, and in great distress.

28. Hours earlier, Officers Battista and Dylan Lynch noticed that the batteries on their body worn cameras had died.

29. Officers Battista and Dylan Lynch knew that their body worn cameras could not record their actions.

30. Upon information and belief, even though Defendants Battista, Dylan Lynch, Patrick Lynch, Nielsen, and Graney each had been assigned body worn cameras at the beginning of their tours, none of their body worn cameras recorded their actions with Dominguez.

31. They directed everyone out of the venue except for Dominguez.

32. They even directed the nurse who was tending to Plaintiff's wound to leave the venue.

33. Officers Battista and Dylan Lynch, Sergeant Patrick Lynch, and Detectives Nielsen and Graney knew that by removing all civilians from the room, there would be no recording of their attack on Dominguez.

34. After the Individual Defendants were alone with Plaintiff they viciously beat and kicked him.

35. By ordering everyone out of the venue, the Individual Defendants prevented attendees from witnessing the attack on Dominguez or rendering aid to Dominguez.

36. As the Individual Defendants attacked Dominguez, they shouted and cursed at him.

37. The beating caused Dominguez to lose consciousness.

38. The Individual Defendants then placed Dominguez in a restraint bag – a human-sized bag designed to fully enclose a person – and took him out to a waiting ambulance.

39. By placing Dominguez in a restraint bag, the Individual Defendants were able to remove Dominguez from the venue without the bystanders observing the physical damage the officers had done to Dominguez's body.

40. Upon information and belief, the NYPD Policy at the time of the incident was that all police officers, detectives, sergeants, and lieutenants regularly assigned to perform patrol duties throughout the city are equipped with body worn cameras.

41. Each of the NYPD officers who responded to the incident were supposed to be equipped with working body worn cameras.

42. Officers were required to record all uses of force, arrests, summonses, interactions with people suspected of criminal activity, all searches of persons and property, any call to a crime in progress, and any interaction with emotionally disturbed people.

43. This incident clearly required the officers, detective, and sergeants responding to the scene to record the entire incident.

44. The NYPD Policy is that any event for which a recording is required must be recorded from start to finish.

45. Each of the Individual Defendants was required to retrieve a body worn camera from a docking station at the precinct prior to the roll call to start the officer's tour.

46. Each of the Individual Defendants was required to turn on the power of the body worn camera and inspect it to ensure that the battery is charged and the device is operational.

47. If any of the body worn cameras were not functioning properly at any point during the tour, the officer, detective, or sergeant was required to notify the desk officer.

48. Although multiple police officers, detectives, and sergeants who were present during the assault of Dominguez had body cameras, none of the body cameras recorded the incident.

7

49. At least two of the Individual Defendants claimed that the batteries on their body worn cameras had died hours before the incident.

50. Upon information and belief, despite having hours to replace their body worn cameras with functioning body worn cameras, none of the individual defendants did.

51. As a result, the brutal assault of Dominguez was not captured on the body worn cameras for any of the responding officers.

52. Dominguez did not regain consciousness until the next day.

53. On information and belief, Defendants have taken no efforts to identify and question Plaintiff's unknown assailant.

54. To Plaintiff's knowledge, Defendants have not arrested his unknown assailant.

55. Dominguez awoke to find himself handcuffed to a hospital bed with an oxygen mask over his face and guarded by a police officer.

56. In order to deflect from Defendants' vicious attack, Dominguez was charged with felony assault of Defendant Dylan Lynch.

57. Dominguez did not physically injure Defendant Dylan Lynch.

58. Dominguez did not cause serious physical injury to Defendant Dylan Lynch.

59. Defendant Dylan Lynch did not suffer serious physical injury during the incident.

60. Defendant Dylan Lynch did not suffer physical injury during the incident.

61. Dominguez was not physically able to assault any of the officers.

62. All Individual Defendants know that there were no grounds for charging Dominguez with felony assault.

63. Because of defendants' conduct, plaintiff was imprisoned, detained, restrained, and held against his will and was unlawfully deprived of his liberty.

64. The arrest of the plaintiff was committed by the defendants without legal process and without probable cause.

65. Defendants forwarded false information to the prosecutors to support the false charges.

66. Defendant Dylan Lynch falsely claimed that he was physically injured by Dominguez and forwarded that information to the prosecutors to support the false charges.

67. Defendant Patrick Lynch knew that Defendant Dylan Lynch was not physically injured by Dominguez but he signed off the false charges and enabled the false information to be forwarded to the prosecutors.

68. Defendant Battista knew that Defendant Dylan Lynch was not physically injured by Dominguez but he forwarded false information to the prosecutors claiming that Dominguez had physically injured him.

69. Although the initial attack on Dominguez by the unknown assailant caused a gash in his face that required multiple stitches, the injuries Dominguez suffered at the hands of the Individual Defendants were far more severe.

70. Dominguez required emergency surgery to treat a frontal sinus fracture – *i.e.*, a fracture in his forehead. That fracture was caused by the Individual Defendants' attack on him, not a knife slash.

71. Dominguez now has metal mesh in his head to correct the damage to his skull.

72. Dominguez also had multiple facial lacerations even though only one was caused by the unknown assailant; the rest were the result of the Individual Defendants' attack on Dominguez.

73. Since the attack, Dominguez has constant headaches. Physical activity as simple as walking down stairs can cause Dominguez's head to throb painfully.

74. Dominguez now suffers from memory loss. He routinely forgets basic information; a problem he did not have before the attack.

75. Dominguez also now suffers from spells of lightheadedness and dizziness. When these spells come on, Dominguez needs to sit down for a while to recover.

76. Dominguez's motor skills have diminished since the attack.

77. The attack also changed Dominguez's mental state. He goes through depressive episodes that he did not previously experience. He is also quicker to feel anger than used to be the case.

78. The Individual Defendants' beating damaged more than Dominguez's skull and brain. His right leg is weak and he requires a cane in order to walk without collapsing.

79. Dominguez also suffers soreness in his left arm and his left shoulder is easily dislocated.

80. Dominguez experiences frequent back pain as a result of the attack.

81. As a result of these injuries, Dominguez is unable to work. Dominguez was previously employed as a sheet metal laborer, which required heavy lifting and climbing ladders. Dominguez's injuries make it impossible to safely perform these tasks.

82. Dominguez's injuries also prevent him from finding other types of work.

83. Plaintiff was required to appear in Court numerous times while the false charges were pending.

84. By Order dated September 27, 2021, Judge Derefim B. Neckles of the Kings County Criminal Court dismissed all charges against Dominguez.

### FIRST CLAIM FOR RELIEF
(EXCESSIVE FORCE)

85. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

86. The Individual Defendants subjected plaintiff to excessive force when they attacked and beat him without justification.

11

87. The Individual Defendants' use of physical force against plaintiff was unnecessary, wanton, excessive, and was not applied in good-faith pursuit of the Individual Defendants' law-enforcement duties.

88. As a result of Defendants' use of excessive force against Plaintiff, Defendants have deprived Plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under 42 U.S.C. §§ 1983 and 1985 and the New York State Constitution.

89. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages alleged herein.

## SECOND CAUSE OF ACTION
### (FALSE ARREST AND ILLEGAL IMPRISONMENT)

90. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

91. The Individual Defendants subjected plaintiff to false arrest, imprisonment, and deprivation of liberty without probable cause.

92. Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under 42 U.S.C. §§ 1983 and 1985 and the New York State Constitution.

93. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages alleged herein.

## THIRD CAUSE OF ACTION
### (MALICIOUS PROSECUTION)

94. Plaintiff repeats and realleges each and every allegation set forth

above as if reasserted and realleged herein.

95. By their conduct, as described herein, and acting under color of state law, Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for violation of his constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

96. Defendants' unlawful actions were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights. The prosecution by Defendants of Plaintiff constituted malicious prosecution in that there was no basis for the Plaintiff's arrest, yet defendants continued with the prosecution, which was resolved in Plaintiff's favor.

97. As a direct and proximate result of the misconduct and abuse of authority stated above, Plaintiff sustained the damages alleged herein.

**FOURTH CAUSE OF ACTION**
**(STATE LAW MALICIOUS PROSECUTION)**

98. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

99. Defendants maliciously commenced criminal proceeding against Plaintiff, charging him with felony assault and other charges. Defendants falsely and without probable cause charged Plaintiff with violations of the laws of the State of New York.

100. The commencement and continuation of the criminal proceedings against Plaintiff was malicious and without probable cause.

101. All charges were terminated in Plaintiff's favor.

102. Defendants, their officers, agents, servants and employees were responsible for the malicious prosecution of Plaintiff. Defendant City of New York, as an employer of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

## FIFTH CAUSE OF ACTION
### (DENIAL OF A RIGHT TO A FAIR TRIAL)

103. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

104. The Individual Defendants Battista, Dylan Lynch, and Patrick Lynch withheld material exculpatory evidence from prosecutors, fabricated and altered evidence related to the acts and statements of Dominguez as a perpetrator and forwarded false evidence to prosecutors in the Kings County District Attorney's Office.

105. In creating false evidence against plaintiff, and in forwarding false information to prosecutors, the Individual Defendants Battista, Dylan Lynch, and Patrick Lynch violated plaintiff's right to a fair trial under the Due Process Clause of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

106. All criminal charges against Plaintiff have been dropped or dismissed, thus resulting in a favorable disposition for Plaintiff.

107. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages alleged herein.

## FOURTH CAUSE OF ACTION
(FAILURE TO INTERVENE)

108.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

109.   Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

110.   Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

111.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages alleged herein .

## FIFTH CAUSE OF ACTION
(ASSAULT AND BATTERY)

112.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

113.   By their conduct, as described herein, the defendants are liable to plaintiff for having assaulted and battered him.

114.   The Individual Defendants intentionally placed Plaintiff in apprehension of imminent harmful or offensive contact.

115.   The Individual Defendants intentionally made harmful and offensive physical contact with Plaintiff without consent.

15

116. Defendant City of New York, as an employer of the individual defendant officers, is responsible for their wrongdoing under the doctrine of respondeat superior.

117. As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiff sustained the damages alleged herein.

### SIXTH CAUSE OF ACTION
(MUNICIPAL LIABILITY)

118. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

119. Defendant City of New York is liable for the damages suffered by the plaintiff as a result of the conduct of its employees, agents, and servants.

120. Defendant City of New York knew or should have known of their employees', agents', or servants' propensity to engage in the illegal and wrongful acts detailed above.

121. Upon information and belief, defendants and their supervisors have in the past falsely arrested individuals without probable cause; assaulted individuals without justification, causing serious injury; and made, and allowed other fellow police officers to make, false entries in official police department records to cover up and hide their wrongful conduct.

122. Upon information and belief, one of the reasons the City of New York and the NYPD require officers to wear body worn cameras is to prevent misconduct by officers.

123. Failure to activate body worn cameras is an "adverse credibility factor" that that Courts increasingly recognize as a means of covering up potential police misconduct. *See United States v. Garcia*, No. 1:19-CR-410-FB-1, 2021 WL 3516447, at *8 (E.D.N.Y. Aug. 10, 2021).

124. The City of New York and the NYPD knew or should have known that officers who intend to break the law or engage in misconduct would not want their actions recorded on body worn cameras.

125. The City of New York and the NYPD knew or should have known that the batteries on body worn cameras would die in the middle of tours.

126. Upon information and belief, the City of New York and the NYPD did not have a policy requiring officers to replace their body worn cameras in the middle of their tours if the battery died or the cameras were otherwise not operational.

127. Because the City of New York and the NYPD did not have a policy requiring its officers to replace non-functional body worn cameras in the middle of a tour, none of the Individual Defendants were required to replace their body worn cameras even though they knew hours before that the cameras could not record their actions.

128. By allowing officers to not record the incident, the City of New York enabled the Individual Defendants to fabricate evidence against Dominguez resulting in the denial of his right to a fair trial.

129. Defendant City of New York has failed to take steps necessary to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual defendants in this and in similar cases involving misconduct.

130. Defendant City of New York has damaged the plaintiff by its failure to properly supervise, train, discipline, review, remove, or correct the illegal and improper acts of its employees, agents or servants in this and in similar cases involving police misconduct.

131. Defendants subjected plaintiff to excessive force, false arrest, false imprisonment, and the denial of a right to a fair trial.

132. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests that this Court enter a Judgment:

A.  Declaring that Defendants' conduct complained of herein violates Plaintiff's rights under the United States Constitution and state law;

B.  Directing Defendants to pay Plaintiff compensatory damages in an amount to be determined by a jury;

C.  Directing the Individual Defendants to pay Plaintiff punitive damages in an amount to be determined by a jury;

D.  Awarding Plaintiff reasonable attorney's fees, costs and disbursements of this action;

E.    Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: Brooklyn, New York
       May 20, 2022

              BROMBERG LAW OFFICE, P.C.

              *Brian L. Bromberg*
           By:   Brian L. Bromberg
              One of Plaintiff's Attorneys

**Attorneys for Plaintiff**

Brian L. Bromberg
Bromberg Law Office, P.C.
352 Rutland Road, #1
Brooklyn, New York 11225
Telephone: (212) 248-7906
Fax: (212) 248-7908

Evan Brustein
Brustein Law PLLC
299 Broadway, 17th Floor
New York, NY, 10007
Telephone: (212) 233-3900
Fax: (212) 285-0531