# BROMBERG LAW OFFICE, P.C.

Brian L. Bromberg (Admitted in NY, NJ & CA)　　　　　　　　　　352 Rutland Road #1
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Brooklyn, NY 11225
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Phone: (212) 248-7906
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Fax:　  (212) 248-7908

October 18, 2022

**Via ECF**
Honorable Katherine Polk Failla, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007



Re:　*Dominguez. v. City of New York, et al.*, 21-CV-2302 (KPF)

Dear Judge Failla:

　　My firm, Bromberg Law Office P.C., along with Brustein Law PLLC, represent Plaintiff Steen Dominguez ( "Plaintiff"). In that capacity, I am writing to request a sixty-day extension of discovery and that the Court compel the production of certain information and documents. With respect to the extension of discovery, Defendants' attorney John Schemitsch, Esq. consents to extending fact discovery from October 21, 2022 until December 20, 2022 and. Similar extension of the other deadlines in the case. Defendants do not consent to the motion to compel discovery.

　　By way of background, on March 16, 2021, Plaintiff filed a complaint alleging *inter alia*, violations of his civil rights by Defendants the City of New York, Police Officer Joseph Battista, and Police Officer Dylan Lynch as well as Police Officers John Doe # 1 through #6, for an incident that occurred on January 1, 2020, in which Plaintiff was assaulted by several NYPD officers, lost consciousness, and sustained serious brain injuries. On May 17, 2021, Defendants' counsel, Susan Scharfstein, Esq. appeared in this action. On May 27, 2021, my firm emailed Ms. Scharfstein and requested information to help identify the John Doe officers. When we received no response, my firm followed up by email with Ms. Scharfstein on June 4, 2021. Ms. Scharfstein responded by asking for clarification. That same day, my firm responded that we were trying to identify the John Doe officers and believed that the identity of the officers on the scene of Plaintiff's arrest would likely be in the City of New York's exclusive possession. On June 18, 2021, even though Plaintiff was seeking the identity of all of the officer's on scene during Plaintiff's arrest, Ms. Scharfstein responded that Plaintiff needed to provide answers to a series of questions before Defendants would identify any officers. On July 20, 2021, Defendants filed a letter requesting a pre-motion conference for its anticipated motion to dismiss based upon Plaintiff's delay in serving a 160.50 release. Plaintiff opposed the application and requested that any conference addressing the anticipated motion also address a schedule for Defendants to provide the names of the John Does. On July 29, 2021, Defendants opposed Plaintiff's request that a schedule be set to identify the John Doe defendants. On July 30, 2021, the Court denied Defendants' request for a pre-motion conference.

　　On August 10, 2021, Plaintiff made a motion, requesting a 90-day extension of time to serve the John Doe defendants, which was granted, and advised the Court that Ms. Scharfstein

had agreed to conduct an investigation to determine the John Doe defendants. On August 18, 2021, my firm emailed Ms. Scharfstein a list of documents we believed would aid in the identification of the John Doe defendaants, including the sprint report for the 911 call, a list of all body worn cameras that were actively recording during the time frame in question and the names of the corresponding officers who wore those cameras, as well as any internal investigation reports or other documents that Ms. Scharfstein believed might be helpful. On August 31, 2021, having received no response from Ms. Scharfstein, my firm followed up with her by email, advising her that we had been able to secure the sprint report from Plaintiff's criminal defense attorney, but needed the roll call for the tour and the codes for specific units identified in the sprint report to identify the John Doe defendants. When Ms. Scharfstein had still not responded, on September 9, 2021, my firm emailed her advising that we would be calling her the following day at 1 p.m. The following day, after trying Ms. Scharfstein at the designated time and receiving no answer, my office emailed her on the same email thread from the day before and August 31, 2021. Ms. Scharfstein responded on that same email thread denying that she had received the September 9 or August 31 emails but "assured that we are working on identifying the officers who were at the location at or about the time of the incident. On September 30, 2021, my firm again followed up with Ms. Scharfstein to advise her that all criminal charges had been dropped against Plaintiff and to find out the status of her investigation into the John Doe defendants. Ms. Scharfstein responded that she had been conducting the investigation and expected to have information for us the following week.

      On October 7, 2021, Ms. Scharfstein provided Plaintiff with a list of 24 officers, without shield numbers, service addresses or any information detailing their involvement in Plaintiff's arrest or restraint. The only information provided was, "I write to provide the names of the members of the NYPF who, on information and belief, were in the vicinity of the location of the incident alleged in this matter at or about the relevant time." On October 9, 2021, Plaintiff requested the documents relied on by Defendants to identify the 24 individuals or any other information in Defendants' possession which would show what the individuals were doing or where they were while Plaintiff was in custody as well as the body camera footage for each identified officer. When Ms. Scharfstein had still not responded, my firm followed up on October 19, 2021. Ms. Scharfstein responded asking the purpose of our email. Plaintiff responded that the documents were needed to determine which of the 24 indiviuals were John Does because Plaintiff was only interested in the officers that were involved or witnessed the attack. Ms. Scharfstein responded that she did not have any documents that would help Plaintiff narrow down the list. When I spoke with Ms. Scharfstein on the phone about narrowing the list of individuals, she indicated that she had reviewed hours of body worn camera footage and spoken to dozens of officers but none of the footage was relevant and none of the officers recalled being present for Plaintiff's arrest, just that they were in the area at or about the time of the arrest. Having been unable to narrow down the list of 24 officers provided by Ms. Scharfstein, on December 17, 2021, Plaintiff Amended the Complaint without identifying any additional defendants and removed the John Doe defendants.

      On February 3, 2022, Plaintiff served Defendants' Ms. Scharfstein with discovery demands. On February 7, 2022, Ms. Scharfstein served Plaintiff with a document purporting to be Defendants' Initial Disclosures, but did not list any specific documents, did not provide any documents, and failed to identify the address and phone number or even the type of information

any of the 24 previously identified officers or any other specific witnesses. *See* Defendants' Initial Disclosures, dated February 7, 2022, attached as Exhibit A. On February 23, 2022, Mr. Schemitsch reached out to me and advised me that he was taking over representation for the Defendants and requested additional time to respond to Plaintiff's discovery demands and to potentially supplement Defendants' Initial Disclosures, which Plaintiff did not oppose.

On March 18, 2022, Mr. Schemitsch provided Plaintiff with supplemental disclosures which included an NYPD TRI Report for the Incident. Not only did the NYPD TRI Report list NYPD Detectives Patrick Graney and Evan Nielson as being involved in the incident, but Sergeant Patrick Lynch was identified as the supervisor. Most significantly, the NYPD TRI Report indicated that Sergeant Ali Javed had reviewed the body worn cameras for Detectives Graney and Nielson and interviewed both of them in regards to their restraint of Plaintiff and determined that "all MOS acted within the scope of their duty and were not in violation of any Department guidelines, prior to mesh restraining blanket subject did bite PO Lynch on leg." *See* NYPD TRI Report, at DEF 11 – DEF12.

On July 26, 2022, Plaintiff sent a Mr. Schemitsch a deficiency letter based upon Defendants' failure to produce (1) Patrol Guide Sections or other policies for the use of body cameras and/or dealing with emotionally disturbed individuals; (2) no documents from the specialized units that were on-scene and involved in the arrest of Plaintiff; (3) no body worn camera footage nor any other documentation regarding which body worn cameras should have been recording during the incident; and, (4) the disciplinary records for Defendants Graney, Nielson, and Sergeant Lynch. On August 3, 2022, having received no response, Plaintiff followed up on the deficiency letter. On August 4, 2022, the parties had a meet confer regarding the deficiency letter as well as Plaintiff's request for a 30(b)(6) deposition to address the use of body-worn cameras and dealing with emotionally disturbed individuals. During the meet and confer, MR. Schemitsch indicated that he would speak with his client.

A follow up meet and confer was held on August 11, 2022, during which Mr. Schemitsch advised that Defendants had not found any body-worn camera footage from the scene of the arrest and indicated that they needed additional time to produce the other documents, in part because he had an upcoming trial. Mr. Schemitsch also indicated that some body-worn camera footage may have been deleted through the normal course of business. We responded to that representation by reminding him that Plaintiff had been arrested as a result of the incident and a Notice of Claim had been filed within 90 days of the Incident, so for both reasons the body-worn camera footage should have been preserved. We also demanded an Affidavit detailing Defendants search with several specific pieces of information delineated and Mr. Schemitsch said that he would speak with his clients and get back to us. At Defendants' request, Plaintiff agreed to bifurcate the *Monell* discovery and a 60-day extension of discovery so that Defendants could produce the necessary documents and information. Following the call, Plaintiff emailed the list of specific information needed for the Affidavit as follows:

1. If the officer was equipped with a BWC on the date of the incident.
2. If the BWC was checked and working properly at the beginning of the officer's tour.
3. If the BWC recorded anything for the entire tour the night of the incident.
4. If any recordings were made at or about the time of the incident.

3

5. If no recordings were made at or about the time of the incident, if that was because of a technological problem with the BWC, the battery died, or if the BWC was working properly but no recording was made.
6. If there was a technological issue with the BWC or the battery died, when the technological issue or battery dying was first identified, and if there are any documents reflecting the issue or timing of the issue.
7. If a recording was made on the BWC, whether that recording still exists.
8. If a recording was made on the BWC but it no longer exists, the date the recording was deleted, and the reason that it was deleted.

On August 12, 2022, Defendants requested a 60-day extension of discovery, and on August 15, 2022, the Court extended fact discovery until October 21, 2022.  On August 29, 2022, we again followed up with Mr. Schemitsch about the outstanding discovery and suggested another call to discuss the outstanding discovery.  On September 1, 2022, Mr. Schemitsch produced the CCRB Histories, IAB Resumes, and CPI Reports for Defendants Nielson, Graney, and Sergeant Lynch.  On September 8, 2022 , we followed up with Mr. Schemitsch requesting the underlying files referenced in the disciplinary summaries.  On September 12, 2022, we had yet another meet and confer with Mr. Schemitsch about the outstanding discovery during which we again requested all of the outstanding discovery and Mr. Schemitsch indicated that he was still waiting for documents to produce and hoped to have more information and documents to produce in another two weeks and that he could possibly produce closing reports for some of the incidents.  On September 28, 2022, the parties again had a call to discuss the outstanding discovery and again no further productions were made by Defendants, only a request for another week.

On October 6, 2022, the parties scheduled another meet and confer to discuss the outstanding discovery.  During the call, Mr. Schemitsch admitted that he had not reviewed any of the underlying disciplinary files or even the closing reports for the cases at issue.  Without having reviewed any of the files, Mr. Schemitsch indicated that none of the complete files would be produced and that they were not relevant.  At this point, approximately eight minutes into the call, we attempted to discuss the specific disciplinary files at issue to address Defendants objections, but Mr. Schemitsch immediately cut off the discussion and said he did not have time to discuss even briefly the outstanding disciplinary records even though the call had been scheduled in advance.  Shortly after ending the meet and confer, we emailed a detailed list of the disciplinary files at issue, indicating which ones we believed were relevant, and which ones we were not seeking.  Notably, Plaintiff is only seeking six files for allegations involving either the use of force, perjury and false statements, and/or misconduct which either were substantiated or no outcome was listed in the records provided to us.  Notably Plaintiff is not seeking any allegations which were either exonerated or withdrawn.  We advised Mr. Schemitsch that we intended to discuss each of these cases during our meet and confer scheduled for October 11, 2022.

During the October 11, 2022 call, Defendants only agreed to produce the closing reports for two cases and objected to producing anything else. Mr. Schemitsch followed up the call in an email writing that "Defendants object to your remaining requests as these allegations of misconduct were not substantiated or did not result in a finding of wrongdoing or which occurred

more than five years prior to the incident, to the extent it seeks information that is not similar to the allegations herein, and to the extent it implicates the privacy and security concerns of parties and non-parties."

As the allegations in this action involve, *inter alia,* claims of excessive force, the denial of the right to a fair trial, and false arrest, prior allegations of perjury, false statements and excessive or unnecessary force by the named Defendants is certainly relevant. The mere fact that an allegation is more than five years old does not make it irrelevant or not discoverable. First, addressing Defendants claim that the allegations are not substantiated or did not result in a finding of wrongdoing, that is inaccurate. Some of the allegations resulted in substantiated charges for some of the charges or lesser charges, and the other files do not indicate one way or another the outcomes of the investigations. As Mr. Schemitsch has not reviewed any of the actual files, he cannot represent to this Court that none of the cases resulted in findings of wrongdoing. Even assuming, *arguendo*, that the allegations were not substantiated, that does not make the underlying files not discoverable.

Second, to the extent that the privacy and security concerns of an individual are implicated, Defendants must have a legitimate basis for claiming these privileges. "Although the Court may give appropriate weight to any compelling state policy interests, the overriding interest in a case involving allegations of constitutional torts is full disclosure of information that is pertinent to an assessment of the merits of the claims and defenses. *King v. Conde,* 121 F.R.D. 180, 187-88 (E.D.N.Y.1988) (citing cases); *Burke v. New York City Police Dep't,* 115 F.R.D. 220, 225 (S.D.N.Y.1987). Even if those privacy concerns were covered by HIPAA, that would still not be a sufficient basis for Defendants to withhold this information. "There are many circumstances in which 'a covered entity may use or disclose protected health information without the written authorization of the individual...or the opportunity for the individual to agree or object.' " *In re Zyprexa,* 254 F.R.D. at 53, quoting 45 C.F.R. § 164.512. Among those circumstances are disclosures made in response to a court order. 45 C.F.R. § 164.512(e)(1)(i). *Senior v. Eihab Hum. Servs., Inc.,* No. 15-CV-1009 (ENV)(PK), 2016 WL 1306548, at *2 (E.D.N.Y. Apr. 1, 2016).

Defendants have cited to no specific concerns, and as these records would almost certainly be produced pursuant to the Attorneys' Eyes Only Confidentiality Stipulation, there can be no legitimate security concerns. With respect to the catch all of "privacy," no evidence has been offered to suggest that there is a privacy concern that should override Plaintiff's right to discovery. Similarly, Defendants should be ordered to produce the Affidavit answering each of the questions posed by Plaintiff as their representation that no body-worn camera video of the Incident were preserved is inconsistent with Ms. Scharfstein's representation that she had indicated that she had reviewed hours of video trying to identify the John Doe defendants and the police paperwork which indicated that Defendant Graney and Nielson's body worn camera footage had been reviewed. Additionally, Defendants have provided no basis for not producing the requested Patrol Guide Sections or related policies. Lastly, Defendants have objected to producing a 30(b)(6) witness on the grounds that it is only relevant for *Monell* discovery. However, we believe whether the individual defendants acted according to NYPD standards is relevant, no only if they were wrong but also to determine how much they veered from

5

acceptable officer to possibly show the absence of mistake and rebut any claims of qualified immunity.

Accordingly, Defendants should be ordered to produce within one week of the Court's Order: (1) the six underlying disciplinary case files should be produced; (2). all other documents from internal investigations into the Incident as well as other police paperwork created by the other responding units and officers; (3) the relevant NYPD Patrol Guide Sections and other NYPD policies; (4) an Affidavit from someone with authority in the NYPD who conducted the search and the answers to each of the questions posed by Plaintiff; and, (5) the name and title of the individual to be offered for a 30(b)(6) deposition.

As detailed above, Plaintiff has diligently tried to prosecute this case and has attempted to resolve disputes with Defendants prior to raising them with the Court. Defendants' failure to produce these documents has prevented Plaintiff from being in a position to take depositions. The extension of fact discovery will enable Defendants to produce whatever documents the Court orders and for the parties to conduct depositions in this matter. This is Plaintiff's first request for an extension of discovery and the second request in this matter.

Plaintiff thanks the Court for its consideration.

Respectfully,

*/s/ Brian L. Bromberg*
Brian L. Bromberg
*Attorney for Plaintiff*

cc:   All counsel of record (via ECF)

---

Application GRANTED IN PART.  The Court GRANTS the unopposed request to extend the remaining discovery deadlines.  The parties shall complete fact discovery on or before **December 20, 2022,** and shall complete expert discovery on or before **February 3, 2023.**

Defendants are hereby ORDERED to respond to Plaintiff's above request to compel production in a letter brief on or before **October 24, 2022.**  The Court reserves judgment on Plaintiff's request so that it may hear from all parties.

Dated:   October 19, 2022
         New York, New York

SO ORDERED.

*[signature: Katherine Polk Failla]*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE