

Muriel Goode-Trufant
*Acting Corporation Counsel*

**T**HE **C**ITY OF **N**EW **Y**ORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**ALAN SCHEINER**
*Senior Counsel*
Phone: (212) 356-2344
Fax: (212) 356-3509
ascheine@law.nyc.gov

July 12, 2024

**VIA ECF**
Honorable Dale E. Ho
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: *Steven Dominguez v. City of New York, et al.*, 21-CV-2302 (DEH)

Your Honor:

   I am a Senior Counsel in the office of Muriel Goode-Trufant, Acting Corporation Counsel of the City of New York, representing defendants City of New York, Officer Battista, Officer Lynch, Lt. Patrick Lynch, Det. Patrick Graney, and Det. Evan Nielsen. Defendants write pursuant to the Court's Order of July 9, 2024 (ECF No. 164), to briefly respond to the plaintiff's submission of additional authority (ECF No. 163), in support of their opposition to the City's motion for summary judgment on plaintiff's Monell claim.

   Plaintiff's additional authority of *Newton v. City of New York*, 779 F.3d 140 (2d Cir. 2015) does not support plaintiff's purported *Monell* claim. Newton concerned a criminal defendants' post-conviction request for DNA evidence, and the NYPD's inability in 1995 to locate vouchered DNA evidence, which was later found in 2005, and which turned out to be exculpatory. The Court in *Newton* ruled that plaintiff had offered sufficient evidence at trial to support a finding of *Monell* liability on the grounds that the NYPD's evidence management system was deliberately indifferent to the plaintiff's right to know whether DNA evidence that he requested was actually retained, so that he could make application under a post-conviction DNA procedure provided by New York State law. *Id.*, 779 F.3d 140, 151. 156-57 (2d Cir. 2015).

   Several factors make *Newton* inapposite to this case. As an initial matter, *Newton* has no relation to plaintiff's *Monell* theory that inadequate training or discipline concerning Body Worn Cameras ("BWCs") caused excessive force and false arrests. *Newton* did not concern training or discipline, and did not discuss any misconduct other than erroneous accounting for the location of evidence.

Presumably plaintiff offers *Newton* in support of his second theory, that the City's allegedly inadequate training and discipline regarding the categorization and retention of BWC videos let to Brady violations in his criminal case. But *Newton* is no more helpful to that theory. First, *Newton* expressly distinguished itself from any claims concerning the destruction of evidence, and neither found nor applied any right to the preservation of DNA (or any other) evidence. *See Id.*, 779 F.3d at 151, 158.

Second, *Newton* acknowledges that, under *Arizona v. Youngblood,* 488 U.S. 51 (1988), a Due Process claim for the destruction of evidence requires proof that a police officer destroyed the evidence in bad faith. *Newton,* 779 F.3d 157-58. But, as defendants noted in their prior submissions, plaintiff here offers no evidence that any officer who had potentially relevant but later deleted videos even knew that plaintiff was arrested or being prosecuted, let alone believed that their videos were exculpatory evidence. If Officers do not know about an arrest or prosecution, there can be no bad faith in failing to preserve the evidence for plaintiff's criminal case.

Third, as set forth in defendants' prior motion papers, plaintiff fails to offer any evidence sufficient to show the City had a policy or practice that is deliberately indifferent to the tracking or preservation of BWC evidence. In *Newton*, the plaintiff offered expert testimony on that subject, as well as detailed statistics about evidence tracking in other cases. *Id.,* 779 F.3d at 154-55. Here, plaintiff offers no such thing, only the NYPD's appropriate policies about a newly implemented BWC program, and statements by one supervisor that failures to follow those policies resulted from "training" that turned out to be partially ineffective, but without stating *why* it was ineffective. Plaintiff identifies no specific deficiencies in any training materials or written policy, or data about a loss of BWC evidence in other cases. *Newton*, expressly held that failures to properly track evidence are to be expected, and do not alone support a *Monell* claim. *Id.*, 779 F.3d at 152 ("[A] fundamentally adequate system for permitting defendants to access evidence does not mean one in which evidence is never lost or destroyed.")

Finally, as defendants previously set forth, plaintiff's Second Amended Complaint pleads no claim for the destruction of BWC videos, and plaintiff was on notice of the facts giving rise to that purported claim at the latest by November 30, 2022 (*see* Plf. Ex. V). It is far too late to amend and add that claim now.

For these reasons and those stated in defendants' prior submissions, plaintiff's supplemental authority provides no basis to allow plaintiff to go to trial on his purported *Monell* claim.

We thank the Court for its consideration of this matter.

Sincerely,

_____*Alan Scheiner*_____ /s/

Alan Scheiner
*Senior Counsel*

cc:    *VIA ECF*
       All counsel