UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN DOMINGUEZ,<br><br>      Plaintiff,<br><br>    v.<br><br>CITY OF NEW YORK, JOSEPH BATTISTA, DYLAN LYNCH, PATRICK LYNCH, EVAN NIELSEN, AND PATRICK GRANEY,<br><br>      Defendants. | 21 Cv. 2302 (DEH)<br><br>**OPINION AND ORDER** |

DALE E. HO, United States District Judge:

  Plaintiff Steven Dominguez sues the City of New York and five Individual Defendants, all officers of the New York City Police Department ("NYPD"), for injuries arising from an alleged assault and false arrest by those officers on the evening of December 31, 2019. Second Am. Compl. ("SAC"), ECF No. 56. Before the Court is the City's motion for partial summary judgment on Dominguez's claim for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). For the reasons that follow, the City's motion for partial summary judgment is GRANTED.

## BACKGROUND

  The City largely adopts Dominguez's version of the facts for purposes of its motion for summary judgment. *See* Def.'s Statement Undisputed Facts ("Def. SOF") 1 n.1, ECF No. 142. Accordingly, except where otherwise noted, the basic facts are undisputed for purposes of this motion.

  On the night of December 31, 2019, Dominguez attended a New Year's Eve party at which he was slashed in the face. Def. SOF ¶ 1; Pl.'s Resp. Def. SOF ("Pl. SOF") ¶ 1, ECF No. 148; SAC ¶¶ 18, 22. At the time of the incident, the NYPD had issued body-worn cameras

("BWCs") and NYPD policy required all officers to record incidents of the sort that occurred in this case. Def. SOF ¶ 2; Pl. SOF ¶ 2; SAC ¶¶ 40-43. NYPD policy required that if any officer's BWC was not functioning during their tour, they were required to notify the desk officer. Def. SOF ¶ 6; Pl. SOF ¶ 6; SAC ¶ 47. The defendant officers arrived at the scene, with at least some of them wearing BWCs; two of the officers were aware that the batteries on their BWCs had run out. Def. SOF ¶ 2-3; SAC ¶¶ 28, 29, 41. Dominguez alleges that he was beaten and kicked. Def. SOF ¶ 4; Pl. SOF ¶ 4; SAC ¶ 34. Police officers then placed Dominguez in a "restraint bag" and brought him to an ambulance; at some point, while in the restraint bag, Dominguez felt his head hit the floor. Def. SOF ¶ 5; Pl. SOF ¶ 5; SAC ¶ 38.[1] None of the BWCs worn by the officers recorded the use of force. Def. SOF ¶ 7; SAC ¶ 48.[2] Dominguez alleges that one of the officers later falsely claimed to prosecutors that he had been physically injured by Dominguez, resulting in a felony assault charge. Def. SOF ¶ 8; Pl. SOF ¶ 8; SAC ¶¶ 56-58. After almost 21 months of prosecution, the criminal court later dismissed the case against Dominguez on speedy-trial grounds. Pl. SOF ¶ 32; Def. Reply SOF ¶ 32; Bromberg Decl. Ex. F, ECF No. 149-6.

On March 16, 2021, Dominguez filed this suit. As relevant here, he brought a claim for municipal liability against the City for "failure to properly supervise, train, discipline, review, remove, or correct the illegal and improper acts of its employees." SAC ¶¶ 118-132. Specifically, he alleged that "[b]ecause the City of New York and the NYPD did not have a policy requiring its officers to replace non-functional body worn cameras in the middle of a tour,

---

[1] Plaintiff disputes the City's characterization of the facts but admits that "Plaintiff was stuffed into a restraint bag and his head was banged against the floor." Pl. SOF ¶ 5.

[2] Plaintiff disputes this fact, arguing that there were multiple BWC recordings that were later deleted. Pl. SOF ¶ 7. Defendants, however, argue that Plaintiff's allegation in the SAC that no BWCs recorded the incident is a judicial admission for purposes of this motion. *See* Def. Reply. Pl. Resp. SOF ("Def. Reply SOF") ¶ 7, ECF No. 160.

none of the Individual Defendants were required to replace their body worn cameras even though they knew hours before that the cameras could not record their actions." *Id.* ¶ 127. He further alleged that, "[b]y allowing officers to not record the incident, the City of New York enabled the Individual Defendants to fabricate evidence against Dominguez resulting in the denial of his right to a fair trial." *Id.* ¶ 128. His claims against the Individual Defendants, which are not at issue here, are for excessive force, false arrest and illegal imprisonment, malicious prosecution, denial of a right to a fair trial, failure to intervene, and assault and battery. *Id.* ¶¶ 85-117.

## LEGAL STANDARDS

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible

---

[3] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.

factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

The City moves for summary judgment on Plaintiff's claim for municipal liability under *Monell*. A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Rather, a municipality can be held responsible for the acts of its employees only when a municipal policy, custom, or practice resulted in the violation of constitutional rights. *Id.* To succeed on his *Monell* claim, Plaintiff must therefore show that the City had "(1) an official policy or custom that (2) caused him to be subjected to (3) a denial of a constitutional right." *Torcivia v. Suffolk Cnty., N.Y.*, 17 F.4th 342, 355 (2d Cir. 2021). To establish causation, a plaintiff must show that the municipal policy was "the moving force of the constitutional violation." *Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985). In other words, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Plaintiff advances two theories for municipal liability: first, "that by not ensuring the proper use of BWCs, NYC made it easier for police officers to beat him down without fear of consequences"; and second, "that by failing to record and preserve *Brady* [*v. Maryland*, 373 U.S. 83 (1963)] material and material for this case, NYC was able to falsely arrest and illegally imprison Plaintiff" and deny him the right to a fair trial. Pl.'s Mem. Opp'n Summ. J. ("Pl. Opp'n") 2-3, ECF No. 147. The Court will address each in turn.

Plaintiff's first theory is that the City should be liable under *Monell* for failing to ensure proper use of BWCs. In his opposition to summary judgment, he acknowledges that "there is no constitutional right to be free from an arrest that is not recorded by a camera." *Id.* at 21. His argument, therefore, is not that BWC use is itself a constitutional requirement, but that the City's failure to ensure proper BWC made it more likely that he would be unconstitutionally assaulted and arrested by the Individual Defendants. *See id.* at 2-3. But *Monell* requires a plaintiff to establish more than just a positive correlation between a municipal policy and the likelihood of constitutional injury—that is, the City's alleged policy must have not only "made it easier" to violate Plaintiffs rights, *id.* at 2-3, it must have been "the moving force of the constitutional violation," *Tuttle*, 471 U.S. at 820. Plaintiff has not made that showing of causation, or even a lesser showing of correlation. Although he points to some evidence in the record suggesting that BWCs *may* reduce the likelihood of excessive force by police, he adduces no evidence that the City's failure to ensure correct BWC use was, in fact, the moving force behind the alleged assault.

Plaintiff points to testimony by Deputy Chief James Mastronardi that proper use of BWCs is "very important" because, among other things, "it prevents anybody from overreaching or becoming overzealous with their actions as police officers." Pl. SOF ¶ 98; Bromberg Decl. Ex. A at 23, ECF No. 149-1. He also points to statements on the NYPD's "Frequently Asked

5

Questions About Body Cameras" page that "body-worn cameras . . . encourage lawful and respectful interactions between the public and the police" and "may help de-escalate potentially volatile encounters."  Pl. SOF ¶¶ 99-100; Bromberg Decl. Ex. L, ECF No. 149-12.  This evidence—assuming it is admissible—modestly supports Plaintiff's theory of an association between proper BWC use and reduced police misconduct, but it does not establish "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *City of Canton*, 489 U.S. at 385.[4]

    Dominguez points to *Jones v. Louisville/Jefferson County Metro Government*, in which a court in the Western District of Kentucky denied a motion to dismiss under Rule 12(b)(6) because "Plaintiffs ha[d] plausibly pleaded . . . a [municipal] custom of not having officers wear or activate body cameras and that this custom caused their injuries."  482 F. Supp. 3d 584, 598 (W.D. Ky. 2020).  The court held that it was "plausible to infer that un-filmed officers may act differently than those who are under surveillance," and "plausible to infer that a city-wide decrease in body camera usage will result in a city-wide increase, to some degree, in incidents of excessive force."  *Id.*  That ruling is inapposite, however, because it was on a motion to dismiss, where the standard for surviving a motion is plausibility, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); here, however, the Court is faced with a summary judgment motion, on which a plaintiff must point to "evidence . . . such that a reasonable jury could return a verdict for the nonmoving party," *Anderson*, 477 U.S. at 248.  Here, even if Plaintiff's theory is plausible, it is not supported by *evidence* that would permit a reasonable jury to return a judgment in his favor.  Other courts in this Circuit have reached similar conclusions at the summary judgment stage.  *See, e.g.*, *Sidbury v. City of New York*, No. 15 Civ. 4761, 2020 WL 2615926, at *5 (E.D.N.Y.

---

[4] Because Plaintiff fails to meet the causation requirement of a *Monell* claim, the Court need not decide whether the other requirements have been met.

May 21, 2020) (granting summary judgment in favor of municipality where there was "no evidence to support any causal connection between the lack of video recording" and plaintiff's injury).[5]

Plaintiff's second theory of *Monell* liability is that the City's failure to preserve BWC recordings that would have been exculpatory resulted in a *Brady* violation and deprived him of his right to a fair trial. Pl. Opp'n 8-10. Plaintiff points to evidence that, in fact, there *was* BWC footage from the incident, but the footage was automatically deleted before it could be turned over to the prosecution to be reviewed for possible *Brady* material. *See id.* at 8-16. But Plaintiff makes no reference to the deletion of BWC recordings or any alleged *Brady* violation in the operative Complaint. *See* SAC ¶¶ 118-132. Summary judgment on this new theory of *Monell* liability is justified on that basis alone.

In a footnote, however, Plaintiff asks in the alternative that his opposition to the Motion for Partial Summary Judgment be construed as a motion to amend the pleadings out of time. Pl. Opp'n 19 n.35. Assuming for the sake of argument that Plaintiff's opposition should be so construed, the Court would nevertheless deny leave to amend.

---

[5] The Court notes that, prior to this case's reassignment to the undersigned, all discovery on the *Monell* claims was bifurcated and stayed until after the Individual Defendants' liability had been established. *See* Order, ECF No. 72. It might therefore seem premature to grant summary judgment on that claim. But Plaintiff has not sought a deferred ruling or an opportunity for further discovery under Rule 56(d). *See* Fed. R. Civ. P. 56(d) (permitting "a nonmovant [to] show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" and authorizing the court to defer ruling or order further discovery). Plaintiff has therefore forfeited any right to object that further discovery could salvage his *Monell* claim. *See Next Commc'ns, Inc. v. Viber Media, Inc.*, 758 F. App'x 46, 50 n.4 (2d Cir. 2018) (holding that plaintiff's argument that bifurcated discovery plan deprived it of necessary information was waived because "a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit" under Rule 56(d), and "failure to file such an affidavit is fatal to a claim" that more discovery was needed (quoting *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999)).

Under the Federal Rules of Civil Procedure, the standard for amending the pleadings "depend[s] on when the amendment is sought." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). Once the deadline to amend the complaint set by the district court's scheduling order has passed, Rule 16(b) applies and a plaintiff must show "good cause" to amend. *Id.* (quoting Rule 16(b)(4)). "Whether good cause exists turns on the diligence of the moving party." *Callahan v. Cnty. of Suffolk*, 96 F.4th 362, 370 (2d Cir. 2024). Here, the deadline for motions to amend the complaint was May 22, 2022. *See* Civ. Case Mgmt. Plan & Scheduling Order 1, ECF No. 51. Accordingly, Plaintiff must demonstrate good cause for leave to amend— and he has not done so.[6] Plaintiff argues that "much of the evidence" in support of the *Brady* claim was produced "as a result of multiple motions to compel, all of which took place long after the deadline to amend the complaint." Pl. Opp'n 19 n.35. That is true enough, but Plaintiff had all the facts he needed to pursue this claim on or around November 30, 2022, the date of the supplemental declaration from an attorney for the NYPD's BWC legal unit disclosing the automatic deletion of multiple videos. *See* Bromberg Decl. Ex. V, ECF No. 149-22. Indeed, he filed a motion for sanctions based on those facts on February 9, 2023. ECF No. 100.[7] Plaintiff

---

[6] To be sure, the scheduling order is not entirely clear. It states: "The Court previous[ly] held this deadline [i.e., the deadline for any motion to amend] TBD. Plaintiff requests 30 days to file an amended complaint, and defendants reserve the right to object as appropriate." *Id.* The Court reads that to set a deadline of 30 days from the date of the order, and that interpretation seems consistent with Plaintiff's understanding. *See* Pl. Opp'n 19 n.35 (noting that evidence came to light "long after the deadline to amend the complaint"). If that interpretation is incorrect, however, and there was no deadline in the scheduling order, then the more "liberal" and "permissive" standard of Rule 15(b) would apply. *Sacerdote*, 9 F.4th at 115. Under that standard, "denial of leave to amend has . . . been held proper [only] upon a showing of undue delay, bad faith, dilatory motive, or futility." *Id.* Because Plaintiff waited eighteen months after the discovery of evidence purportedly supporting his *Brady* argument to seek amendment and provides no explanation for the delay, the Court would still deny leave to amend under Rule 15(b)'s standard based on undue delay.

[7] At a conference before Judge Failla on March 14, 2023, the court denied Plaintiff's motion for sanctions, including an adverse inference at trial, based on the deletion of BWC

provides no good cause for the eighteen-month delay between his discovery of the relevant facts and his request for amendment. *See Smith v. New York City Dep't of Educ.*, 524 F. App'x 730, 733 (2d Cir. 2013) (holding that Plaintiff "failed to establish good cause for the delay" when he sought to amend his complaint "six months after the . . . deadline for amended pleadings, one month after the . . . deadline for fact discovery, and two weeks after defendants filed their motion for summary judgment"). Accordingly, the request to amend the SAC to add a *Monell* claim based on an alleged *Brady* violation is denied.

## CONCLUSION

The Motion for Partial Summary Judgment is **GRANTED**. By **March 12, 2025**, the parties shall file a joint letter stating their availability for trial in May 2025 and beyond. The Clerk of Court is respectfully directed to terminate ECF No. 140.

The Court previously granted temporary sealing of four unredacted documents filed in connection with Plaintiff's summary judgment opposition. *See* ECF No. 155. Because neither Plaintiff nor Defendant has requested permanent sealing by the deadline established by the Court, *see* ECF Nos. 155, 161, those documents shall be unsealed. The Clerk of Court is respectfully directed to unseal ECF Nos. 151, 151-1, 151-2, and 151-3.

SO ORDERED.

Dated: February 25, 2025
New York, New York

DALE E. HO
United States District Judge

---

footage. *See* Min. Entry, Mar. 14, 2023; Videoconference Recording, Mar. 14, 2025 (on file in chambers). Judge Failla noted that "if the record changes in the future and it's appropriate to either raise the issue again, or to raise it in the context of *in limine* practice before trial, then perhaps I'll hear from you again on this point." Videoconference Recording at 1:18. Thus, any renewed motion for spoliation of evidence, *see* Pl. SOF ¶ 7 (alluding to such a motion), shall state what has changed in the record since Judge Failla's ruling on March 14, 2023.