

**THE CITY OF NEW YORK**

**LAW DEPARTMENT**

100 CHURCH STREET
NEW YORK, N.Y. 10007

**MURIEL GOODE-TRUFANT**
Corporation Counsel

**BRIAN FRANCOLLA**
*Senior Corporation Counsel*
Tel.: (212) 356-3527
Fax: (212) 356-3509
bfrancol@law.nyc.gov

August 26, 2025

**BY ECF**
Honorable Dale E. Ho
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

       Re:  <u>Steven Dominguez v. City of New York, et al.</u>, 21-CV-02302 (DEH)

Your Honor:

       I am a Senior Counsel in the Office of Muriel Goode-Trufant, Corporation Counsel of the City of New York, and the attorney representing defendants in the above-referenced action. In that capacity, I write in response to plaintiff's August 14, 2025 application setting forth the basis for his anticipated motion for spoliation pursuant to the Court's August 12, 2025 Order.

       To the extent plaintiff was going to renew his motion for spoliation, defendants understood that endeavor to be a fairly simple one. Specifically, for any renewed motion for spoliation to be successful, plaintiff would need to demonstrate whether the evidentiary record – relevant to the discrete issue of potentially relevant body worn camera footage ("BWC") that was deleted – has changed since Judge Failla's March 14, 2023 ruling and if so, how any such change(s) would warrant a different decision than the one previously reached. That understanding was based upon this Court's very clear instruction contained in the decision granting defendants' motion for partial summary judgment: "any renewed motion for spoliation of evidence, <u>see</u> Pl. SOF ¶ 7 (alluding to such a motion), shall state what has changed in the record since Judge Failla's ruling on March 14, 2023." <u>Dominguez v. City of New York</u>, 21 Civ. 2302 (DEH), 2025 U.S. Dist. LEXIS 34706, *11 fn. 7 (S.D.N.Y. Feb. 25, 2025).

       Despite those clear instructions, and a 126-page submission including attached exhibits, plaintiff's application fails to explain in any way how the evidentiary record – relevant to the discrete issue in question – has changed in any respect, let alone that it changed in such a way that would warrant a different decision than the one already reached by Judge Failla. Instead,

plaintiff's submission reiterates old arguments that have previously been rejected, advances specious arguments without any support in law or logic, raises unrelated complaints about how discovery proceeded since March 14, 2023, and levies unwarranted personal attacks against my predecessors that are completely without basis. Nothing, however, in plaintiff's lengthy submission warrants any of the extraordinary relief he is seeking.

Because of the sprawling nature of plaintiff's application, the undersigned begins by briefly reiterating the undisputed record regarding what potentially relevant evidence was destroyed – a record that in relevant part, remains completely unchanged from that which was before Judge Failla on March 14, 2023. On October 7, 2021, my predecessor, ACC Susan Scharfstein, wrote to plaintiff's counsel for purposes of disclosing "the names of the members of the NYPD who, on information and belief, were in the vicinity of the location of the incident alleged in this matter at or about the relevant time." See Defendants' October 7, 2021 letter, annexed hereto as Ex. A. In that disclosure, ACC Scharfstein identified twenty-four members of service. Id. Turning to the dispute that resulted in the March 14, 2023 conference before Judge Failla, my predecessor, ACC John Schemitsch, opposed plaintiff's application – one that in relevant part mirrors the instant application from plaintiff. See Plaintiff's February 9, 2023 Application, annexed hereto as Ex. B and Defendants' February 21, 2023 Opposition, annexed hereto as Ex. C. ACC Schemitsch provided the Court and plaintiff's counsel with a chart, contained within a supplemental declaration from Allison Arenson, an attorney with the NYPD Legal Bureau, addressing the existence and retention of any BWC that was created by the twenty-four members of service previously identified for the relevant time period in question. See Defendants' Ex. C, at pp. 14-15. It was undisputed that the relevant time period in question began at 3:37 a.m. on January 1, 2020 – when the initial 911 call was placed that prompted a police response – and ended at 4:46 a.m. on the same day – at the point when plaintiff was transferred to the hospital by ambulance. Id. at p. 2.[1] Despite plaintiff's representations otherwise then or now, there were only three BWC videos which were potentially relevant that were deleted for reasons my predecessors already explained, none of which, according to Judge Failla, warranted a finding of spoliation. Specifically, according to Judge Failla, there was no evidence of any intent to deprive and the requested sanction would be too severe given the number of videos in question. See Transcript from March 14, 2023 Conference, annexed hereto as Ex. D, pp. 42: 20 – 49: 25. Nothing in plaintiff's August 14, 2025 submission even argues that this evidentiary record has been altered, let alone in a way that warrants a different decision.

Notwithstanding, plaintiff's counsel references portions of six depositions that occurred after the March 14, 2023 conference and immediately argues, presumably with respect to the members of service whose depositions he referenced, that "[t]hese videos should have not just been turned over to Plaintiff's lawyers as part of Defendants' Initial Disclosures, but to his criminal-defense attorney back in January 2020, as potential *Brady* and *Rosario* material, well before any of the videos would have been deleted on July 1, 2021." See Plaintiff's August 14, 2025 Application, p. 2. Respectfully, it is not clear what "these videos" means nor is there any support in the evidentiary record that any relevant BWC generated by the six members of service

---

[1] During the March 14, 2023 conference, plaintiff's counsel did not necessarily agree that this was the relevant time period, however, any initial disagreement was either withdrawn or entirely speculative. See Transcript from March 14, 2023 Conference, annexed hereto as Ex. D, pp. 15: 20 – 42: 12.

referenced was destroyed.  In fact, the evidentiary record makes clear that with respect to these six members of service, no relevant BWC was destroyed.  Specifically, focusing again on the relevant time period set forth above (beginning at 3:37 a.m. on January 1, 2020, and ending at 4:46 a.m. that same day), the evidentiary record makes clear as follows:

- Detective Peter Martin did not generate any BWC;
- Police Officer Theobald did generate BWC that was produced;
- Sergeant Tara Mannix did not generate any BWC;
- Police Officer Durity did not generate any BWC;
- Police Officer Iorio did generate BWC that was produced;
- Police Officer Eldiasty did not generate any BWC; and
- Sergeant Kevin Tresham did generate BWC that was produced.

See Defendants' February 21, 2023 Opposition, annexed hereto as Ex. C, pp. 14-15.  Accordingly, with regard to any potentially relevant BWC that was destroyed, plaintiff's application in no way even claims that the record before the Court now is different in any relevant respect to that which was before Judge Failla.  For the same reasons, the same result is warranted.

Separately, at best, plaintiff seems to be arguing that the individuals arguably at fault for the destroyed BWC in question are not the parties themselves, but rather, their counsel.  See Plaintiff's August 14, 2025 Application, p. 5 ("*Counsel* for Defendants Had Intent to Deprive") (emphasis added).  Again, the record set forth above refutes that contention.  Even if it were true as a factual matter, however, plaintiff fails to cite any legal authority for the proposition that the failure of an attorney to preserve evidence should result in an adverse inference against the attorney's client.  Consistent with the illogical nature of that argument, plaintiff cites to zero legal authority in support of it.  Regardless of who plaintiff claims had the intent to deprive, he fails to point to any new evidence that would satisfy that standard.

Plaintiff separately also appears to argue that he is entitled to an adverse inference over the alleged failure of members of service to affirmatively create evidence he believes they should have created.  Specifically, plaintiff argues that "[t]he Court should issue an instruction that the jurors must draw an adverse inference from failing to record or shutting off their cameras."  See Plaintiff's August 14, 2025 Application, p. 3.  It is unclear from plaintiff's submission what factual predicate exists for the claim that any or all of the twenty-four members of service in question were necessarily in a position and had the ability to record relevant events but did not.  Even if one existed, this argument, in addition to being completely illogical as well without any actual legal authority to support it, appears to also be in conflict with plaintiff's concession during the partial summary judgment briefing phase that "there is no constitutional right to be free from an arrest that is not recorded by a camera."  Dominguez, 2025 U.S. Dist. LEXIS 34706, *6.  Indeed, plaintiff's attempts to bring a constitutional claim addressing this issue generally has already been dismissed.  Id., generally.

Notwithstanding, spoliation, by definition, "is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp., 2025 U.S. App. LEXIS 17694, *26-27 (2d Cir. July 17, 2025).  Further, "[a] party seeking

3

sanctions based on spoliation must establish by a preponderance of evidence: '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" Klipsch Grp., Inc. v. ePRO E-Commerce Ltd., 880 F.3d 620, 628 (2d Cir. 2018). It is axiomatic that a party cannot be responsible for destroying evidence that never existed.

In sum, plaintiff's request that the Court issue an instruction that the jurors must draw an adverse inference from failing to record or shutting off their cameras should be denied as without any evidentiary or legal basis to support it. Similarly, plaintiff has not set forth any explanation for how the evidentiary record before Judge Failla relevant to the issue of spoliation is any different now than it was then and for that reason alone, his renewed request for an adverse inference instruction should be denied again. To the extent Judge Failla precluded plaintiff's request during discovery to depose Ms. Arenson, or have the Court conduct further *voir dire* of my predecessors, nothing that has happened since warrants the far more advanced request from plaintiff now that each be forced to testify as a witness at trial. Defendants can otherwise address any issues not sufficiently addressed herein either at the Court's discretion in advance of the parties' September 3, 2025 conference or during same.

Thank you for your consideration herein.

Respectfully submitted,

/s/
Brian Francolla
Senior Counsel
Special Federal Litigation Division

cc:   All Counsel (By ECF)