# BROMBERG LAW OFFICE, P.C.

Brian L. Bromberg (Admitted in NY, NJ & CA)　　　　　　　　　　　　352 Rutland Road #1
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Brooklyn, NY 11225
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Phone: (212) 248-7906
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Fax:　 (212) 248-7908

February 9, 2023
Honorable Katherine Polk Failla, U.S.D.J (Via ECF)
Re:　　*Dominguez v. City of New York, et al.*, SDNY Case No. 21-CV-2302 (KPF)

Dear Judge Failla:

My office, together with Brustein Law PLLC., represents the plaintiff, Steven Dominguez, in the above-referenced civil rights case against New York City and members of the New York Police Department. I am writing to request a conference regarding Plaintiff's anticipated motions to: (1) Order Defendants to produce Allison Arenson, Esq. who produced two inconsistent declarations about NYPD's efforts to locate relevant BWC footage and to preserve and produce it; (2) sanction Defendants for their failure to preserve evidence and timely produce evidence by making an adverse inference against Defendants for their destruction of evidence in any summary judgment motion by Defendants and/or also issuing a jury instruction should the case proceed to trial about Defendants' misconduct, awarding attorneys' fees related to this motion and efforts to obtain the destroyed evidence, as well as any other sanctions the Court deems appropriate; (3) that the Court *voir dire* Susan Scharfstein, Esq. and John Schemitsch, Esq., attorneys for Defendants; and (4) that the Court direct Defendants to provide available dates for the deposition of Inspector Mastronardi within three days or produce him for a deposition on a date and time chosen by Plaintiff. *Residential Funding Corp. v. DeGeorge Fin'l Corp.*, 306 F.3d 99 (2002).

By way of background, Plaintiff was slashed in the face during a New Years' Eve Party during the early morning hours of January 1, 2020. According to Defendants' Initial Disclosures, dated February 7, 2022, which references Defendants' letter, dated October 7, 2021, Defendants identified 24 NYPD Officers as witnesses they intended to rely on in this action. *See* Defendants' Initial Disclosures, dated February 7, 2022, attached as <u>Exhibit A</u>; *see* Defendants' October 7, 2021 letter, attached as <u>Exhibit B</u>. On February 8, 2022, Plaintiff's counsel emailed Ms. Scharfstein and a supervisor at the New York City Law Department to note the following deficiencies in Defendants' Initial Disclosures: (1) the lack of any contact information for the witnesses; (2) the lack of any description of what those witnesses would be expected to testify about; (3) that no documents had been produced in connection with Defendants' Initial Disclosures; and (4) that Defendants had also failed to provide even a basic description of the categories of documents Defendants intended to rely on other than the generic catchalls such as "NYPD paperwork."

Neither Ms. Scharfstein nor her supervisor responded to that email or corrected the deficient Initial Disclosures. On March 18, 2022, after Mr. Schemitsch had taken over representation of Defendants, Mr. Schemitsch produced supplemental initial disclosures and produced 58 pages of discovery, which included a document that said that the BWC videos of the incident existed for Defendant Graney and Defendant Nielsen. *See* DEF 12, annexed as <u>Exhibit C</u>.

Based upon the lack of information provided by Defendants despite repeated demands for the information, Plaintiff is respectfully requesting that the Court Order the Defendants to produce

Ms. Arenson for a deposition so that Plaintiff can question her under oath, *inter alia*, about the inconsistencies in her declarations and why her unit, of which she is the Managing Attorney, allowed 16 videos during the relevant time period to be deleted. For context, according to the Supplemental Declaration of Allison Arenson, dated November 30, 2022, 16 BWC videos were automatically deleted by NYPD after 18 months, which would have been July 1, 2021. Since Plaintiff was arrested on January 1, 2020, filed a Notice of Claim on March 19, 2020, testified at his 50-h Hearing on July 31, 2020, filed this federal action on March 16, 2021, Ms. Scharfstein appeared in this action on behalf of Defendants on May 17, 2021, and his criminal prosecution was not dismissed until September 27, 2021. There is no excuse for the City of New York and the NYPD's BWC Unit to have allowed 16 BWC videos to be deleted. As Defendants have put Ms. Arenson forth as a witness by producing two declarations regarding the production and search for BWC's, Plaintiff should have an opportunity to depose her. *Residential Funding Corp.*, 306 F.3d at 112 ("Rather, [Defendant-Appellant] should be given an opportunity to renew its motion for sanctions, with the benefit of discovery—including, but not necessarily limited to, reexamination of the back-up tapes and appropriate depositions of [Plaintiff-Appellee's] affiants—and, if appropriate, an evidentiary hearing before the District Court.")

"To warrant an adverse-inference instruction for the destruction of evidence, a court must find '(1) that the party having control over the evidence had an obligation to preserve it at a time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense." *Glover v. Costco Wholesale Corp.*, 153 Fed.Appx. 774, 776 (2d Cir. 2005) (summary order). "The 'culpable state of mind' requirement is satisfied in this circuit by a showing of ordinary negligence." *Phoenix Four, Inc. v. Strategic Res. Corp.,* 05 Civ. 4837, 2006 WL 1409413 at *4 (S.D.N.Y. May 23, 2006)." *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 198 (S.D.N.Y. 2007), *aff'd sub nom. Gordon Partners v. Blumenthal*, No. 02 CIV 7377 LAK, 2007 WL 1518632 (S.D.N.Y. May 17, 2007)

It is well-established that, once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy (including recycling of electronic disks and data) and put in place a "litigation hold" to ensure the preservation of relevant documents. Once the "litigation hold" is in place, a party and its counsel must communicate with key employees to make certain all sources of potentially relevant information are identified and placed "on hold," and that all backup media are identified and stored in a safe place. *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432; *see also*, Adv. Comm. Note to 2006 Amendment to Fed. R. Civ. P. 26(b)(2); *see also Osberg v. Foot Locker, Inc.*, No. 07-CV-1358, 2014 WL 3767033, *9 (S.D.N.Y. July 25, 2014) ("Because defendants were under an obligation to preserve evidence, yet negligently failed to implement a litigation-hold and negligently destroyed documents that likely were relevant to this litigation, a sanction is appropriate.") As it is undisputed that Defendants allowed 16 videos to be deleted despite multiple different legal obligations and multiple events that should have triggered the preservation of the videos, Defendants should be sanctioned.

Plaintiff submits that part of the appropriate sanctions in this case should include a finding that Defendants have impermissibly deleted 16 BWC videos. As Defendants' spoliation of evidence prevents Plaintiff from using those videos in an anticipated motion for summary judgment and a subsequent trial, Plaintiff requests the Court not only make an adverse inference for purposes of

the anticipated motion for summary judgment, but also provide a jury instruction that the jury can infer that the deleted videos would have negatively impacted Defendants' case. The reason for the request at this early stage is that Defendants should not benefit from Plaintiff's inability at the summary judgment stage to introduce those videos, which would be damaging to Defendants' case, in their opposition to any summary judgment motion. Regardless of whether Defendants' destruction of the videos was intentional, grossly negligent, or merely negligent, an adverse-inference sanction is appropriate here: "[T]he risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss." *Residential Funding Corp.*, 306 F.3d at 109.

There can be no question that the destroyed videos would be relevant to the claims and defenses. First, the 16 videos are from the time frame of the incident and from the body worn cameras of NYPD Officers identified in Defendants' own Initial Disclosures as witnesses that Defendants intended to rely on. The destruction of these 16 videos is extremely significant. As such, each of the elements for an adverse inference have been established, and Defendants must be sanctioned. Plaintiff will not be able to use those 16 destroyed videos in either a summary judgment motion or at trial before a jury, and a negative inference is necessary to avoid punishing Plaintiff for Defendants' destruction of evidence. Furthermore, Plaintiff repeatedly attempted to obtain the existing BWC footage from Defendants, but was repeatedly rebuffed, even after filing a motion to compel. Significantly, Defendants' delays in producing the few minutes of BWC footage that was not destroyed and identifying the NYPD Officers in those videos prevented Plaintiff from having sufficient time for filing a Second Amended Complaint to add any of the additional officers before the statute of limitations expired on December 31, 2022. As two motions to compel were filed prior to this motion for sanctions, Defendants should also be ordered to pay Plaintiff's reasonable attorneys' fees for the effort to obtain the BWC footage and identify the John Doe officers.

Moreover, the statements submitted to the Court by Ms. Scharfstein and Mr. Schemitsch fail to address the questions raised by the Court and raise more questions about the efforts of Defendants to properly fulfill their obligations in discovery. As Ms. Scharfstein and Mr. Schemitsch have both appeared as counsel of record, Plaintiff's counsel respectfully requests that they be *voir dire*-ed by the Court based upon the sensitive nature of questioning attorneys of record and the need to find out the truth about what Defendants did and did not do to preserve evidence and produce it to Plaintiff as they were legally obligated to do. *Id.* at 112. In furtherance of this request, Plaintiff has attached as <u>Exhibit D</u> a list of some of the questions the Court may also want answers to from Ms. Scharfstein and Mr. Schemitsch.

Finally, Plaintiff requests that the Court direct Defendants to provide dates when Inspector Mastronardi is to be made available for deposition within three days or to produce him for a deposition on a date and time chosen by Plaintiff. Defendants are not opposing having Mr. Mastronardi's deposition taken, but despite promising to provide dates for more than one month, Defendants have not provided available dates.

Respectfully,
*/s/ Brian L. Bromberg*
Brian L. Bromberg

3

# Exhibit A



**THE CITY OF NEW YORK**

**GEORGIA M. PESTANA**
*Corporation Counsel*

# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**Susan P. Scharfstein**
*Special Federal Litigation Division*
*212-356-2355*
sscharfs@law.nyc.gov

February 7, 2022

*(via email at evan@brusteinlaw.com)*
Evan Brustein, Esq.
Brustein Law, PLLC
299 Broadway, 17th Floor
New York, NY 10007

*(via email at brian@bromberglawoffice.com)*
Brian Bromberg, Esq.
Bromberg Law Office, P.C.
352 Rutland Road # 1
Brooklyn, NY 11225

Re: Dominguez v. City of New York, et al., 21 CV 2302 (KPF)

Dear Counsel:

Pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, defendants City of New York, Joseph Battista, and Dylan Lynch hereby provide the following for their initial disclosures:[1]

Rule 26(a)(1)(A)(i).  the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment:  plaintiff; defendants; the NYPD officers identified in defendants' letter dated October 7, 2021; persons referenced in the Amended Complaint filed on December 17, 2021 (Docket Entry # 31); civilians other than plaintiff who were present at the scene of the alleged incident; medical providers; other witnesses and/or other individuals identified in documents to be exchanged in discovery by the parties and/or whose identities will be disclosed during discovery.

Rule 26(a)(1)(A)(ii).  a copy of, or a description by category and location of, all documents, electronically stored information, and tangible things that are in the possession,

---

[1] I understand that, in light of the COVID-19 coronavirus public health emergency, plaintiff consents to service of discovery by email.

custody or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment:  NYPD records; district attorney and court documents; medical records; other documents to be exchanged in discovery.

Rule 26(a)(1)(A)(iii).  a computation of any category of damages claimed by the disclosing party, making available for inspection and copying under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered:  Not applicable.

Rule 26(a)(1)(A)(iii).  for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment:  Not applicable.

By producing this information, defendants do not waive and expressly reserve any objections that may be asserted in the future.  Further, defendants reserve their right to supplement their Rule 26(a)(1) disclosures as necessary if additional information becomes available in keeping with the Federal Rules.  Defendants also reserve the right to demand the return of information, if any, that was inadvertently produced.

Thank you for your attention to this matter.

Sincerely,

/s/ Susan P. Scharfstein

Susan P. Scharfstein

# Exhibit B



**GEORGIA M. PESTANA**
*Corporation Counsel*

T**HE** C**ITY OF** N**EW** Y**ORK**
LAW DEPARTMENT
**100 CHURCH STREET**
**NEW YORK, NY 10007**

*Susan P. Scharfstein*
*Special Federal Litigation Division*
*212-356-2355*
*sscharfs@law.nyc.gov*

October 7, 2021

*(via email at joshua@bromberglawoffice.com; brian@bromberglawoffice.com)*
Joshua Tarrant-Windt, Esq.
Brian Bromberg, Esq.
Bromberg Law Office, P.C.
352 Rutland Road # 1
Brooklyn, NY  11225

       Re:  <u>Dominguez v. City of New York, et al.</u>, 21 CV 2302 (KPF)

Dear Counsel:

       At your request, I write to provide the names of the members of the NYPD who, on information and belief, were in the vicinity of the location of the incident alleged in this matter at or about the relevant time.  They are as follows:

P.O. Joseph Battista
P.O. Dylan Lynch
D.I. John Mastronardi
Sgt. Patrick Lynch
Sgt. Tara Mannix
P.O. Terrance Durity
P.O. Anthony Waite
P.O. Francesco Iorio
P.O. Michael Lagattolla
Sgt. Kevin Tresham
P.O. Julio Casiano
P.O. Adrian Theobald
Sgt. Matthew Henderson
P.O. Joseph Baker
P.O. Daniel Ingber
P.O. Rolex Roldan
P.O. Mohamed Eldiasty
P.O. Jonathan Ortega
~~P.O. Darrell Scraper~~
~~P.O. Tremaine Gooden~~

Det. Patrick Graney
Det. Evan Nielsen
P.O. David Mercado
Det. Peter Martin

    Thank you for your courtesy and cooperation.

             Sincerely,

             */s/ Susan P. Scharfstein*

             Susan P. Scharfstein

# Exhibit C

## MEMBER INVOLVED

**MOS Type:** UMOS
| | | | |
|---|---|---|---|
| **Command:** 457 | **Command Description:** EMER SERV SQ 07 | **Tax Number:** 920348 | **Rank:** DETECTIVE SPECIALIST |
| **Last Name:** GRANEY | **First Name:** PATRICK | | |
| **Send Notification?:** Yes | **Notification Date:** 01/01/2020 05:59 | | |
| **Firearm Discharged?:** No | **Alleged/Suspected Actions Prohibited by PG 221-01?:** No | **Alleged/Suspected Excessive Force?:** No | |
| **BWC Video?:** Yes | **BWC Viewed?:** Yes | | |

**MOS Type:** UMOS
| | | | |
|---|---|---|---|
| **Command:** 457 | **Command Description:** EMER SERV SQ 07 | **Tax Number:** 933096 | **Rank:** DETECTIVE SPECIALIST |
| **Last Name:** NIELSEN | **First Name:** EVAN | | |
| **Send Notification?:** Yes | **Notification Date:** 01/01/2020 08:29 | | |
| **Firearm Discharged?:** No | **Alleged/Suspected Actions Prohibited by PG 221-01?:** No | **Alleged/Suspected Excessive Force?:** No | |
| **BWC Video?:** Yes | **BWC Viewed?:** Yes | | |

**MOS Type:** UMOS
| | | | |
|---|---|---|---|
| **Command:** 075 | **Command Description:** 075 PRECINCT | **Tax Number:** 963129 | **Rank:** POLICE OFFICER MALE |
| **Last Name:** LYNCH | **First Name:** DYLAN | | |
| **Send Notification?:** Yes | **Notification Date:** 01/01/2020 08:29 | | |
| **Firearm Discharged?:** No | **Alleged/Suspected Actions Prohibited by PG 221-01?:** No | **Alleged/Suspected Excessive Force?:** No | |
| **BWC Video?:** No | **BWC Viewed?:** No | | |

## SUBJECTS/CIVILIANS INVOLVED

| | | | |
|---|---|---|---|
| **Role:** Subject | | | |
| **Last Name:** dominguez | **First Name:** steven | **Middle:** | |
| **Nickname/Alias/Maiden Name:** | **Sex:** Male | **Race:** White Hispanic | |
| **Age Type:** Exact | **Date of Birth:** 05/18/1994 | **Age:** 25 | |
| **Height:** 5 ft 9 in | **Weight:** 180 lbs | | |

### RESIDENCE ADDRESS

| | | | |
|---|---|---|---|
| **Homeless:** No | | | |
| **Address Type:** NYC | | | |
| **Building No.:** 140 | **Street Name:** BRADHURST AVENUE | **Unit Type:** | **Unit Number:** |
| **Borough:** Manhattan | **State:** New York | | |

## VIDEO CANVASS

**Video Canvass Conducted:** No

## DETAILS OF INCIDENT

### (INCLUDE RESULTS OF INTERVIEWS AND VIDEO CANVASS)

Sgt Javed of ESS 7 interviewed ESU MOS listed above in regards to this job. ESU was requested to the above location in regards to an EDP. EDP was victim of a crime and received multiple injures to his face prior to any police contact. ESU personnel used a mesh restraining blanket in order to stop the EDP from hurting himself and other MOS present on scene. BWC footage of Det Graney and Det Nielsen viewed by Sgt Javed. All MOS acted within the scope of their duty and were not in violation of any Department guidelines. prior to mesh restraining blanket subject did bite PO Lynch on leg.

## OTHER MEMBERS PRESENT AT SCENE DURING INCIDENT

# Exhibit D

**Exhibit D**

**Plaintiff's Proposed *Voir Dire* Questions for Ms. Scharfstein and Mr. Schemitsch**

1. Since Ms. Scharfstein admitted to having accessed six BWC footage on July 30, 2021, why she not include those six videos in Defendants' Initial Disclosures on February 7, 2022?

2. Ms. Scharfstein admitted to accessing the six BWC videos on July 30, 2021, what did she do with those videos after she accessed them?

3. Pursuant to the Court's December 1, 2022 Order, Defendants identified seven NYPD Officers from the 6 BWC videos in addition to the originally named Defendants Joseph Batista and Dylan Lynch.  As Ms. Scharfstein claimed in her December 2, 2022 letter to the Court that "it is possible, however, that I stated that I spent hours reviewing BWC, as it is generally my practice to thoroughly review BWC, why was Ms. Scharfstein and the Defendants unable to identify these seven officers until Ordered to do so by the Court approximately 16 months later?

4. Why did Defendants not turn over any documents as part of their Initial Disclosures?

5. How did Ms. Scharfstein preserve the 6 BWC videos she reviewed?

6. Were the BWC kept in the electronic case file with the rest of the evidence?
    a. If not, why not?
    b. If they were, how did Mr. Schemitsch, not only miss the note in the transfer memo about the BWC videos, but also miss the actually videos?

7. Since Ms. Scharfstein had reviewed BWC for 6 of the officers identified in Defendants' Initial Disclosures, why was no description given at least for the officers with BWC footage?

8. What steps, if any, did Ms. Scharfstein take to identify the officers in the BWC?

9. Did the New York City Law Department issue a preservation demand or litigation hold after Plaintiff timely filed his Notice of Claim in this case, and if so, when?

10. Since Ms. Scharfstein wrote in her letter to the Court that she had received 6 BWC videos from the BWC Unit, why did Ms. Arenson, the Managing Attorney of NYPD Legal Bureau's Body Worn Camera Unit, provide a declaration claiming that no BWC videos had been found?

11. Mr. Schemitsch makes it seem in his December 2, 2022 letter to the Court that the first time he learned that Ms. Scharfstein had reviewed BWC footage was after he had produced the Declaration of Allison Arenson, dated November 7, 2022. However, not only had Plaintiff's counsel repeatedly demanded Mr. Schemitsch produce BWC

1

footage because Ms. Scharfstein had claimed that she had reviewed hours of BWC footage, but Plaintiff had also explicitly stated as much in Plaintiff's First Motion to Compel, dated October 18, 2022. *See* Civil Docket Sheet, at Document Number 73. Is the apparent representation by Mr. Schemitsch that the first time he asked Ms. Scharfstein whether she had reviewed or obtained any BWC footage November 9, 2022 accurate?

12. If that is accurate, why did he not ask Ms. Scharfstein about BWC footage any of the times Plaintiff's counsel had raised it in the past or at least prior to October 24, 2022 when he responded to Plaintiff's First Motion to Compel. *See* Civil Docket Sheet, at Document Number 75.

13. When did City receive document bearing Bates Stamp Number DEF 12?
    a. If it was prior to July 1, 2021, why was no effort made to preserve those specific BWC videos?