

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*

**THE CITY OF NEW YORK
LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

JOHN SCHEMITSCH
*Senior Counsel*
Phone: (212) 356-2375
Fax: (212) 356-3509
jschemit@law.nyc.gov

February 21, 2023

**VIA ECF**
Honorable Katherine P. Failla
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re:    Steven Dominguez v. City of New York, et al., 21-CV-2302 (KPF)

Your Honor:

I am a Senior Counsel in the office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, representing defendants City of New York, Officer Battista, Officer Lynch, Lt. Patrick Lynch, Det. Patrick Graney, and Det. Evan Nielsen. Defendants write in response to plaintiff's motion to compel and for sanctions, dated February 9, 2023. (See ECF No. 100).

By way of background, plaintiff asserts various claims, including false arrest, excessive force, and municipal liability, *inter alia*, arising out of an alleged incident in the early morning of January 1, 2020. Early that morning, plaintiff, while intoxicated at a New Year's Eve party and after being assaulted and severely injured by an unidentified patron at the party, bit a police officer on the ankle who was responding to the scene and needed to be secured in order to have medical care provided to him. Plaintiff specifically alleges that he was injured by police officers in the process of being secured.

On February 9, 2023, plaintiff wrote to the Court requesting a conference and requesting the Court (1) compel defendants to produce Allison Arenson, Esq., who deals with Body Worn Camera ("BWC") productions for the NYPD, for deposition; (2) sanction defendants by making an adverse inference for deleted BWC footage; (3) *voir dire* the undersigned and Susan Scharfstein, Esq., previous attorney for defendants; and (4) direct defendants to provide available dates for a deposition of Inspector Mastronardi or produce him for a deposition on a date and time chosen by plaintiff.

**A.      Plaintiff's Spoliation Motion**

Addressing first defendants motion for sanctions, plaintiff requests the Court "sanction Defendants for their failure to preserve evidence and timely produce evidence by making an adverse inference against Defendants for their destruction of evidence in any summary judgment motion by Defendants and/or also issuing a jury instruction should the case proceed to trial about defendants' misconduct, awarding attorneys' fees related to this motion and efforts to obtain the destroyed evidence, as well as any other sanctions the Court deems appropriate[.]" (See ECF No. 100). In particular, plaintiff alleges that 16 BWC videos were impermissibly deleted.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Stanbro v. Westchester Cty. Health Care Corp., No. 19 Civ. 10857 (KMK)(JCM); 20 Civ. 1591 (KMK)(JCM), 2021 U.S. Dist. LEXIS 163849, at **11-12 (S.D.N.Y. Aug. 27, 2021). Regarding electronically stored information, including video footage, spoliation is now governed by Rule 37(e), as amended in 2015, requiring a three party inquiry: "(1) whether a party failed to take reasonable steps to preserve ESI that should have been preserved in anticipation of litigation; (2) whether there has been prejudice to another party from the loss of the ESI, in which case the Court may order sanctions 'no greater than necessary to cure the prejudice,' as authorized by subsection (e)(1); and (3) whether the party responsible for the spoliation 'acted with the intent to deprive another party of the information's use in the litigation,' in which case the court may impose the 'most severe of measures enumerated in contemplated in subsection (e)(2)." Ransom v. Andrews, 2022 U.S. Dist. LEXIS 197852 at *10-11 (S.D.N.Y. Oct. 31, 2022). Plaintiff seeks an adverse inference under Fed. R. Civ. P. 37(e)(2), which should be denied because defendants did not possess a culpable state of mind.

First, to clarify, plaintiff's claim that there are 16 missing BWC videos, which plaintiff does not identify in his motion, is mistaken - in fact, there are three. While there are 16 missing videos, only three are relevant to this case. The parties are in agreement any involvement by NYPD surrounding this incident occurred no earlier than 3:37 AM on January 1, 2020, when an initial 911 call was placed, and ended no later than 4:46 AM, when plaintiff was transported to the hospital by ambulance. (See Sprint Report, attached as Exhibit A). Per a search of the NYPD's database of BWC footage for January 1, 2020, only seven BWC videos, not 16, were recorded during that time and have not been retained. (See Supplemental Declaration of Ms. Arenson, attached as Exhibit B). Defendants agree that one BWC video from Detective Graney at 4:42, one from Detective Nielsen at 4:37, and one from Officer Waite at 4:14 a.m., may be potentially relevant to this case.

However, there is no reason to believe the other four videos relate to this incident. Defendants produced one BWC camera video from Officer Waite, which depicts his arrival via car at the scene at 4:08 AM. As such the other three BWC videos from Officer Waite that are earlier to that time are not relevant to the instant case. (See Still Image from Officer Waite BWC Footage, attached as Exhibit C). There were two videos taken by Officer Gooden within the relevant time period. Both at 4:17 A.M., one of which was not retained. The only way that two videos can have the same time stamp is if they were both recorded within the same sixty-second

time period. The first video from Officer Gooden taken at 4:17 is 46 seconds long, and is not retained. Therefore, in order to have the same time stamp, the second video must have begun within 13 second of the termination of the first. The second retained video from Officer Gooden, also recorded at 4:17, is over 19 minutes long and shows the arrest of different individual, unrelated to plaintiff, and in a different location. It is therefore not reasonable to find that either video would have been related to plaintiff, given this timing. As such, there are three – not 16 - deleted BWC videos that can reasonably be said to be potentially relevant to this case. Those are–one from Detective Graney at 4:42, one from Detective Nielsen and one from Officer Waite at 4:14.

"Even where the preservation obligation has been breached, sanctions will only be warranted if the party responsible for the loss had a sufficiently culpable state of mind." Rabenstein v. Sealift, Inc., 18 F. Supp. 3d 343, 362 (E.D.N.Y. 2014) (citation omitted). Here, plaintiff cannot show defendants had a sufficiently culpable state of mind. As discussed in Ransom, the third prong of the analysis for a spoliation motion is whether defendant intended to deprive plaintiff of use of the ESI. As in Ransom, there is no evidence that the BWC videos were destroyed intentionally. Rather, the BWC footage of Graney and Neilsen was automatically deleted pursuant to the NYPD's eighteen month retention policy.[1]

Furthermore, this office timely requested all BWC footage. Plaintiff filed his Complaint on March 16, 2021. (See ECF No. 1). This office requested BWC footage from the NYPD Legal Bureau's BWC Unit on June 17, 2021. (See ECF No. 88). Due to the large number of requests received by the Unit, the BWC Unit did not conduct a search for BWC footage until July 6, 2021. (See Exhibit B). By the time the BWC Unit conducted the search, the videos from Det. Graney and Nielsen had been deleted automatically due to the eighteen month retention policy. (See Declaration of Ms. Arenson, attached as Exhibit D). Similarly, it appears that the one video from Officer Waite was automatically deleted. However, because that video was originally in a different system, it cannot be said when that deletion happened. What can be said is that defendants actions here, as in Ransom, lack the sufficiently culpable state of mind to warrant an adverse inference. Spoliation penalties are appropriate, in part, when it would deter parties from destroying evidence in the future. Chin v. Port Auth. of N.Y. and N.J., 685 F.3d 135, 162 (2d Cir. 2012). Here, defendants did what was in their control to ensure the BWC footage would be retained and had no reason to think additional steps would be needed to achieve this objective. Defendants therefore, should not shoulder the burden of sanctions in this case.

Plaintiff further seeks attorneys' fees and additional sanctions, which are not warranted here. Fed. R. Civ. P. 37(e)(1) states that upon a showing that ESI that should have

---

[1] The eighteen month retention policy is for videos categorized not as summons, arrest, or homicide. Upon information and belief, these videos were improperly tagged as non-arrest videos. Further, Det. Graney and Nielsen do not recall being aware at the time that this incident involved the arrest of plaintiff. Upon information and belief, Officer Waite does not generally recall this incident. If they were aware at the time that this incident involved plaintiff's arrest, defendants recognize that their videos should have been so marked and then would have been retained.

been preserved is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, upon a finding of prejudice to another party from loss of the information, a Court may order measures no greater than necessary to cure the prejudice.  Here, defendants took reasonable steps to preserve this information, including requesting the BWC footage from the BWC Unit at an early juncture prior to its automatic deletion.  As such, any request for further sanctions, including attorneys' fees, is unsupported and unwarranted.

**B.**      **Plaintiff's Motion to Compel Production of Ms. Arenson for Deposition**

Second, plaintiff's request to compel defendants to produce Allison Arenson for deposition should be denied.  Following an discovery dispute regarding BWC footage, the Court ordered defendants to produce an affidavit describing the search for BWC footage.  Defendants produced such on November 7, 2022, which noted, *inter alia*, that based on searches performed by the BWC Unit, one video was found pertaining to this incident. (See Declaration of  Ms. Arenson, attached as Exhibit D).  Plaintiff raised this issue of additional BWC footage they believed existed, and moved to compel, *inter alia*, statements from the undersigned and Susan Scharfstein answering specific questions, as well as a supplemental affidavit from Ms. Arenson with answers to specific questions. (See ECF Nos. 79 and 82).  The Court granted the motion in part and directed defendants to provide an affidavit responding to the following questions: (1) if the officer was equipped with a BWC on the date of the incident; (2) if the BWC was checked and working properly at the beginning of the officer's tour; (3) if the BWC recorded anything for the entire tour the night of the incident; and (4) if any recording were made at or about the time of the incident. (See ECF No. 84).[2]  Defendants produced such on November 30, 2022. (See Exhibit B).  Plaintiff cites no reason for a deposition of Ms. Arenson, beyond alleged inconsistencies in her declarations and why videos were deleted.  Defendants note that Ms. Arenson's declarations provided the Court ordered information to the extent it was within her personal knowledge.  Further, the alleged inconsistencies are that Ms. Arenson's initial search did not uncover five BWC videos, which she confirms.  There is no reason to believe that there are additional videos, nor is there any explanation as to why the search parameters for the videos are material to this lawsuit.  Upon information and belief, the five subsequently produced videos were not found in the searches discussed in Ms. Arenson's initial declaration due to the NYPD's BWC system at the time being transitioned to a separate system.  The videos discussed handed over were preserved and there is no additional reason to believe that further videos, other than those discussed above, were not preserved and produced in discovery.  Plaintiff has made clear in his motion that he is seeking an adverse inference for the alleged spoliation of BWC footage, he has not asserted that he needs any additional discovery in order to make this motion, nor would any deposition testimony from Ms. Arenson be material to this lawsuit.  Therefore, this request should be denied.

---

[2] The Court further noted that additional questions posed by plaintiff in his motion to compel were better suited for depositions of the individual officers. (See ECF No. 84).

**C.      Plaintiff's Request to Voir Dire Defendants' Current and Prior Attorneys**

Third, plaintiff's request that the Court *voir dire* the undersigned and attorney Susan Scharfstein should be denied.  As discussed above, the Court, in a November 16, 2022 Order, directed the undersigned and Ms. Scharfstein to provide statements detailing (1) what investigative steps each took to identify relevant BWC footage; (2) what footage each reviewed and when; and (3) what steps each took to preserve the footage. (See ECF No. 84).  The undersigned and Ms. Scharfstein provided such statements to plaintiff and the Court. (See ECF Nos. 88, 89).[3]  Plaintiff baselessly alleges that the undersigned and Ms. Scharfstein failed to address these questions.  Plaintiff provides no basis for why the Court should take the extreme measure of holding a *voir dire* of the undersigned and Ms. Scharfstein.  There is no reason to believe that there are additional BWC videos, nor does plaintiff provide any explanation as to the materiality of his request to seek responses to the proposed *voir dire* questions beyond an apparent attempt to harass defendants' prior and current attorneys.  In essence, plaintiff seeks discovery on discovery and has not proffered a basis for the Court to *voir dire* defendants' attorney and prior attorney. See generally Freedman v. Weatherford Int'l Ltd., 2014 U.S. Dist. LEXIS 102248 (S.D.N.Y. Jul. 25, 2014).  This request made by plaintiff is a completely unnecessary intrusion.

**D.      Plaintiff's Request to Schedule Inspector Mastronardi's Deposition**

Finally, plaintiff requests the Court direct defendants to provide available dates for a deposition of Inspector Mastronardi.  Defendants are investigating Inspector Mastronardi's role, if any, in the alleged incident as they have reason to believe he may not have actually been present, and thus would not be a factual witness.  Defendants are happy to provide plaintiff and the Court a further update and a date for his deposition, if appropriate, within two weeks.

As such, defendants request the Court deny plaintiff's motion in its entirety.

Thank you for your consideration herein.

Sincerely,

/s/

John Schemitsch
*Senior Counsel*

cc:      **VIA ECF**
        Brian Bromberg, Esq.
        Evan Brustein, Esq.
        *Attorneys for Plaintiff*

---

[3] To clarify the statement provided on December 2, 2022, the undersigned notes that plaintiff had previously raised the issue of there being additional BWC footage prior to the production of the November 7, 2022 Declaration of Ms. Arenson.

# Exhibit A

I/NetDispatcher -- Event Chronology D20010106560

# Event Chronology -- D20010106560

## Summary

| Event Number/Type | Location | Event Times |
|---|---|---|
| D20010106560<br>10H1 (INVESTIGATE/POSSIBLE CRIME: CALLS FOR HELP/INSIDE) | 2531 ATLANTIC AVE BK HINSDALE ST / WILLIAMS AVE | Started 01/01/20 03:47:19<br>Created 01/01/20 03:50:10<br>First Dispatch 01/01/20 05:09:25 |

| First Call | Assigned Units | Cross-References | Dispositions |
|---|---|---|---|
| T-MOBILE USA<br>(917) 345-5950<br>LL(-73:54:03.8520,40:40:32.9232): EST 2525 ATLANTIC AVE BK<br>Call Count 1 | | D20010106672<br>A20010106788<br>A20010106907 | |

☑ Include System Comments          ☐ Include Associated Events

## Report

**Total records returned: 48**

| Date/Time | Operator | Terminal | Details |
|---|---|---|---|
| 01/01/20 03:47:19 | 370196 | ps2-c102 | **ANI/ALI Number: 121457121**<br>Caller Name: T-MOBILE USA<br>Caller Phone: (917) 345-5950<br>Location: 2557 ATLANTIC AVE BROOKLYN<br>Telco Comment: : NW<br>Company: TMOB<br>Service Class: WPH2<br>Latitude: +040.675780<br>Longitude: -073.901005<br>XY: XY(101171141,18549718) |
| 01/01/20 03:47:27 | 370196 | ps2-c102 | **ANI/ALI Number: 121457128**<br>Caller Name: T-MOBILE USA<br>Caller Phone: (917) 345-5950<br>Location: 2557 ATLANTIC AVE BROOKLYN<br>Telco Comment: : NW<br>Company: TMOB<br>Service Class: WPH2<br>Latitude: +040.675833<br>Longitude: -073.901091<br>XY: XY(101168753,18551646) |
| 01/01/20 03:47:34 | 370196 | ps2-c102 | **ANI/ALI Number: 121457138**<br>Caller Name: T-MOBILE USA<br>Caller Phone: (917) 345-5950 |

DEF 28

| | | | |
|---|---|---|---|
| | | | Location: 2557 ATLANTIC AVE BROOKLYN<br>Telco Comment: : NW<br>Company: TMOB<br>Service Class: WPH2<br>Latitude: +040.675790<br>Longitude: -073.901048<br>XY: XY(101169948,18550081) |
| 01/01/20<br>03:47:39 | 370196 | ps2-c102 | **ANI/ALI Number: 121457141**<br>Caller Name: T-MOBILE USA<br>Caller Phone: (917) 345-5950<br>Location: 2557 ATLANTIC AVE BROOKLYN<br>Telco Comment: : NW<br>Company: TMOB<br>Service Class: WPH2<br>Latitude: +040.675758<br>Longitude: -073.901070<br>XY: XY(101169339,18548914) |
| 01/01/20<br>03:47:45 | 370196 | ps2-c102 | **ANI/ALI Number: 121457149**<br>Caller Name: T-MOBILE USA<br>Caller Phone: (917) 345-5950<br>Location: 2557 ATLANTIC AVE BROOKLYN<br>Telco Comment: : NW<br>Company: TMOB<br>Service Class: WPH2<br>Latitude: +040.675758<br>Longitude: -073.901091<br>XY: XY(101168756,18548914) |
| 01/01/20<br>03:47:52 | 370196 | ps2-c102 | **ANI/ALI Number: 121457159**<br>Caller Name: T-MOBILE USA<br>Caller Phone: (917) 345-5950<br>Location: 2557 ATLANTIC AVE BROOKLYN<br>Telco Comment: : NW<br>Company: TMOB<br>Service Class: WPH2<br>Latitude: +040.675758<br>Longitude: -073.901048<br>XY: XY(101169949,18548915) |
| 01/01/20<br>03:47:58 | 370196 | ps2-c102 | **ANI/ALI Number: 121457162**<br>Caller Name: T-MOBILE USA<br>Caller Phone: (917) 345-5950<br>Location: 2557 ATLANTIC AVE BROOKLYN<br>Telco Comment: : NW<br>Company: TMOB<br>Service Class: WPH2<br>Latitude: +040.675812<br>Longitude: -073.901070<br>XY: XY(101169336,18550882) |
| 01/01/20<br>03:48:04 | 370196 | ps2-c102 | **ANI/ALI Number: 121457169**<br>Caller Name: T-MOBILE USA<br>Caller Phone: (917) 345-5950<br>Location: 2557 ATLANTIC AVE BROOKLYN<br>Telco Comment: : NW |

I/NetDispatcher -- Event Chronology D20010106560

| | | | |
|---|---|---|---|
| | | | Company: TMOB<br>Service Class: WPH2<br>Latitude: +040.675812<br>Longitude: -073.901070<br>XY: XY(101169336,18550882) |
| 01/01/20<br>03:50:10 | 370196 | ps2-c102 | **D event D20010106560 created**<br>at 2531 ATLANTIC AVE BK<br>Cross Street HINSDALE ST<br>Cross Street WILLIAMS AVE<br>Name: T-MOBILE USA<br>Address: LL(-73:54:03.8520,40:40:32.9232): EST 2525 ATLANTIC AVE BK<br>Call Source: ANI/ALI<br>Phone Number: (917) 345-5950<br>Zone: Z22<br>PCT/Sector: 75A<br>Type 10H1 (INVESTIGATE/POSSIBLE CRIME: CALLS FOR HELP/INSIDE)<br>Precinct 75<br>Sector 75A<br>Status P<br>Priority 3 |
| 01/01/20<br>03:50:10 | 370196 | loi-search | **Event Comment (System)**<br>** LOI search completed at 01/01/20 03:50:10 |
| 01/01/20<br>03:50:10 | 370196 | ps2-c102 | **Event Comment (User)**<br>LOUD COMMOTION HEARD AT LOC- NO WPNS NO INJS- FEM SCREAMING TO GET AWAY- UNK |
| 01/01/20<br>03:50:10 | 370196 | ps2-c102 | **Event Comment (User)**<br>COND - CALLER HU- NFI - LOC TAKEN FROM RAPID SOS - ANI-ALI-9173455950 T-MOBILE |
| 01/01/20<br>03:50:10 | 370196 | ps2-c102 | **Event Comment (User)**<br>USA 2557 ATLANTIC AVE NW BROOKLYN COS:WPH2 LAT: 040.675812 LON:-073.901070 OPER |
| 01/01/20<br>03:50:10 | 370196 | ps2-c102 | **Event Comment (User)**<br>PICKETT, CANDICE D-C-PCPPDVCP518-200 |
| 01/01/20<br>04:51:55 | 359398 | ps2-d22b | **Event Comment (System)**<br>Event D20010106560 has been displayed by the covering dispatcher |
| 01/01/20<br>04:51:55 | 359398 | ps2-d22b | **Event Comment (System)**<br>** >>>> by: 359398 at 01/01/20 04:51:55 on terminal: ps2-d22b |
| 01/01/20<br>04:56:44 | 359398 | ps2-d22b | **Cross-Referenced to D20010106672** |
| 01/01/20<br>04:56:44 | 359398 | ps2-d22b | **Event Comment (System)**<br>Routes D from incident 20010106672 cancelled and duplicated to D20010106560. |
| 01/01/20<br>04:56:44 | 359398 | ps2-d22b | **Event Comment (System)**<br>Duplicate Event:Location = 2529 ATLANTIC AVE BK, Cross Street 1 = HINSDALE ST, |
| 01/01/20<br>04:56:44 | 359398 | ps2-d22b | **Event Comment (System)**<br>Cross Street 2 = WILLIAMS AVE, Type = 10H1 INVESTIGATE/POSSIBLE CRIME: CALLS FOR |

DEF 30

I/NetDispatcher -- Event Chronology D20010106560

| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (System)**<br>HELP/INSIDE, Subtype = default |
|---|---|---|---|
| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (User)**<br>03:54:57 - ps1-c077 - FEM HEARD ON THE LINE -- TRYING TO PROVIDE LOC POSS 27 POS SPEAKING FOREIGN |
| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (System)**<br>03:54:57 - loi-search - ** LOI search completed at 01/01/20 03:54:57 |
| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (User)**<br>03:54:57 - ps1-c077 - LANGUAGE |
| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (User)**<br>03:54:57 - ps1-c077 - UNK COND ANI ALI LOC USED |
| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (User)**<br>03:54:57 - ps1-c077 - ANI-ALI-9173455950 T-MOBILE USA 2557 ATLANTIC AVE NW BROOKLYN COS:WPH2 LAT: |
| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (User)**<br>03:54:57 - ps1-c077 - 040.675930 LON:-073.901177 OPER JONES, RACHEL S-C-MTPPDVCP300-169 OPER 1679 |
| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (User)**<br>03:55:10 - ps1-c077 - CORRECTION RAPID SOS LOC |
| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (User)**<br>04:01:44 - ps1-c077 - COMMOTION HEARD IN BACKG |
| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (User)**<br>04:03:22 - ps1-c077 - CORRECTION BACKGROUND |
| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (System)**<br>04:55:57 - ps2-d22b - Event D20010106672 has been displayed by the covering dispatcher |
| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (System)**<br>04:55:57 - ps2-d22b - ** >>>> by: 359398 at 01/01/20 04:55:57 on terminal: ps2-d22b |
| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (System)**<br>End of Nearby Duplicate Event data |
| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (System)**<br>** Cross Referenced to Event # D20010106672 at: 01/01/20 04:56:44 |
| 01/01/20 04:56:44 | 359398 | ps2-d22b | **Event Comment (System)**<br>** >>>> by: ASHLEY A. RODRIGUEZ on terminal: ps2-d22b |
| 01/01/20 05:01:03 | 359398 | ps2-d22b | **Event Comment (System)**<br>AutoDial: (917) 345-5950, for Event #: D20010106560 |
| 01/01/20 05:02:23 | 359398 | ps2-d22b | **Event Comment (User)**<br>CK CB .................DID NOT CALL FOR PD D 1396 |
| 01/01/20 05:09:25 | 364117 | ps2-d22a | **Unit Action - D20010106560**<br>Unit 75A2-1 Route D Precinct 75 Action DA |
| 01/01/20 05:09:25 | 364117 | ps2-d22a | **Event Updated - D20010106560**<br>Status D<br>First Unit Dispatched Time 01/01/20 05:09:25 |
| 01/01/20 05:09:25 | 364117 | ps2-d22a | **Event Comment (System)**<br>75A2-1 -- Event D20010106560 Dispatch Assigned |

DEF 31

| 01/01/20 05:16:02 | 364117 | ps2-d22a | **Disposition Type DUPNCAN Assigned - D20010106560** |
|---|---|---|---|
| 01/01/20 05:16:02 | 364117 | ps2-d22a | **Cross-Referenced to A20010106788** |
| 01/01/20 05:16:02 | 364117 | ps2-d22a | **Cross-Referenced to A20010106907** |
| 01/01/20 05:16:02 | 364117 | ps2-d22a | **Event Closed D20010106560**<br>Duplicate and Cancel |
| 01/01/20 05:16:02 | 364117 | ps2-d22a | **Event Updated - D20010106560**<br>Closing Comment Duplicate and Cancel<br>Primary Employee Id 0 |
| 01/01/20 05:16:02 | 364117 | ps2-d22a | **Event Comment (System)**<br>Route cancelled: D20010106560. Duplicate of incident kept: D20010106907 |
| 01/01/20 05:16:02 | 364117 | ps2-d22a | **Event Comment (System)**<br>** Cross Referenced to Event # D20010106907 at: 01/01/20 05:16:02 |
| 01/01/20 05:16:02 | 364117 | ps2-d22a | **Event Comment (System)**<br>** >>>> by: REKISHA T. RANKIN on terminal: ps2-d22a |

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

STEVEN DOMINGUEZ,

                                    Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

                                 Defendants.

**SUPPLEMENTAL
DECLARATION OF
ALLISON ARENSON**

21-CV-2302 (KPF)(SDNY)

-----------------------------------------------------------------------x

      **ALLISON ARENSON** declares, under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

      1.  I have been employed by the New York City Police Department ("NYPD") since October of 2004. I currently serve as the Managing Attorney of the Legal Bureau's Body Worn Camera Unit ("Legal BWCU"). I have held this position since May 1, 2017.

      2.  I make this supplemental affidavit based upon my personal knowledge and upon my knowledge of the procedures utilized by Legal BWCU and the NYPD, and upon information provided or document prepared by other employees of the NYPD which I believe to be true and accurate.

      3.  At the request of the Law Department, I executed a declaration on November 7, 2022, setting forth searches that had been conducted by the Legal BWCU for any video recordings maintained by the NYPD concerning the arrest of Steven Dominguez ("plaintiff") on January 1, 2020. The results of these searches yielded one (1) responsive body worn camera ("BWC") video remaining in evidence.com as well as information that two (2) BWC videos had been deleted from evidence.com pursuant to the NYPD's retention policy.

      4.  I have since been informed by the Law Department that the Court in this matter has issued an order requiring defense to provide information on the following four (4) questions pertaining to twenty-four (24) NYPD officers: (1) if the officer was equipped with a BWC on the date of the incident, (2) if the BWC was checked and working properly at the beginning of the officer's tour, (3) if the BWC recorded anything for the entire tour the night of the incident and (4) if any recordings were made at or about the time of the incident.

      5.  While I cannot answer or provide information regarding the second question as I was not present at the start of the officer's tours, NYPD Patrol Guide section 212-123, Use Of Body-Worn Cameras sets forth policy that all uniformed members must turn their BWC power on and inspect the BWC prior to roll call to ensure that the battery is charged and the device is operational. With regards to the remaining questions, the table below provides the

information based upon a search conducted of evidence.com for each officer listed for the date and time of January 1, 2020 between the hours of 0200 and 0700.

| Officer Name and Shield # | Was officer assigned a BWC on January 1, 2020 | BWC Videos between 0200 and 0700 on January 1, 2020 |
|---|---|---|
| PO Joseph Battista – Shield # 17231 | Yes | No BWC videos. |
| PO Dylan Lynch – Shield # 23699 | Yes | No BWC videos. |
| Sgt. Patrick Lynch – Shield # 421 | Yes | No BWC videos. |
| Det. Patrick Graney – Shield 5356 | Yes | Deleted BWC video recorded at 0442 hours. |
| Det. Evan Nielsen – Shield # 4266 | Yes | Deleted BWC video recorded at 0437 hours. |
| PO David Mercado – Shield # 3783 | Yes | No BWC videos. |
| Det. Peter Martin – Shield # 3029 | Yes | No BWC videos. |
| DI John Mastronardi | No | |
| Sgt. Tara Mannix – Shield # 3361 | Yes | Deleted BWC video recorded at 0258 hours. |
| PO Terrance Durity – Shield # 16005 | Yes | BWC video recorded at 0521 hours and produced to Law Department. Deleted BWC video recorded at 0201 hours. |
| PO Anthony Waite – Shield # 9649 | Yes | BWC video recorded at 0409 hours and produced to Law Department. Deleted BWC videos at 0333, 0348, 0356, 0414, 0514 and 0525 hours. |
| PO Francesco Iorio – Shield # 5463 | Yes | BWC video recorded at 0408 hours and produced to Law Department. |
| PO Michael Lagattolla – Shield # 28165 | Yes | BWC video recorded at 0408 hours and produced to Law Department. |
| Sgt. Kevin Tresham – Shield # 2252 | Yes | BWC video recorded at 0407 hours and produced to Law Department. Deleted BWC video recorded at 0221 hours. |

| PO Julio Casiano – Shield # 26708 | Yes | No BWC videos. |
|---|---|---|
| PO Adrian Theobald – Shield # 31670 | Yes | BWC video recorded at 0431 hours and produced to Law Department. Deleted BWC videos recorded at 0224 and 0243 hours. |
| Sgt. Matthew Henderson – Shield # 2285 | Yes | No BWC videos. |
| PO Joseph Baker – Shield # 25987 | Yes | No BWC videos. |
| PO Daniel Ingber – Shield # 5331 | Yes | No BWC videos. |
| PO Rolex Roldan – Shield # 25139 | Yes | No BWC videos. |
| PO Mohamed Eldiasty – Shield # 3051 | Yes | Deleted BWC video recorded at 0219 hours. |
| PO Jonathan Ortega – Shield # 1852 | Yes | No BWC videos. |
| PO Darrell Scraper – Shield # 29011 | Yes | No BWC videos. |
| PO Tremaine Gooden – Shield # 19610 | Yes | Deleted BWC videos recorded at 0214 and 0417 hours. There is a second BWC video recorded at 0417 hours, however it depicts the transport of an arrested individual who is not the plaintiff. The first deleted video recorded at 0417 hours was only 46 seconds in duration thereby allowing a second video to be activated at the same time. |

6.   While further reviewing Legal BWCU's case file to draft this supplemental declaration, it came to my attention that we received Law Department's request for the BWC footage pertaining to this lawsuit on June 17, 2021, however a search for the BWC footage was not conducted until July 6, 2021 due to the large number of requests received by the unit. At this time, the NYPD retention policy for BWC videos that were not specifically categorized

as a summons, arrest or homicide were scheduled to be automatically deleted after eighteen (18) months.

*Alli Aren*

**ALLISON ARENSON**

Dated: New York, NY
      November 30, 2022

EXHIBIT C



2020/01/01  04:08:39 GMT - 5



# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

STEVEN DOMINGUEZ,

                                   Plaintiff,     **DECLARATION OF**

              -against-                     **ALLISON ARENSON**

THE CITY OF NEW YORK, et al.,        21-CV-2302 (KPF)(SDNY)

                             Defendants.

-------------------------------------------------------------------x

       **ALLISON ARENSON** declares, under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

       1. I have been employed by the New York City Police Department ("NYPD") since October of 2004. I currently serve as the Managing Attorney of the Legal Bureau's Body Worn Camera Unit ("Legal BWCU"). I have held this position since May 1, 2017.

       2. I make this affidavit based upon my personal knowledge and upon my knowledge of the procedures utilized by Legal BWCU and the NYPD, and upon information provided by other employees of the NYPD which I believe to be true and accurate.

       3. The Legal BWCU handles all requests for body-worn camera ("BWC") footage recorded by uniformed members of the Department. These types of requests include, but are not limited to, Requests made pursuant to Public Officers Law § 87 (Freedom of Information Law) and litigation from the public; subpoenas from prosecuting authorities in family court; and requests from City agencies, including the New York City Law Department ("Law Department").

       4. Once a request from the Law Department is received, a member of the Legal BWCU uses the information provided in the request to search the Department's BWC storage software, Axon's Evidence.com, to locate BWC footage responsive to the request.

       5. At the request of the Law Department, a search by the Legal BWCU was conducted in our BWC software for any video recordings maintained by the NYPD concerning the arrest of Steven Dominguez ("plaintiff") on January 1, 2020.

       6. The search parameters included the date of arrest (January 1, 2020), an expanded search around the time of arrest (0200x0700), as well as all uniformed members of service assigned to the 75th precinct (precinct of occurrence). The results of this search illustrated one (1) body-worn camera video recorded by Police Officer Terrance Durity which is responsive to the request. This video was thereafter shared by Legal BWCU to the Law

Department through evidence.com, and it is my understanding that, in turn, provided by the Law Department to plaintiff.

7.  At the request of the Law Department, a search was conducted for specific officers including Lieutenant Patrick Lynch, Police Officer Joseph Battista and Police Officer Dylan Lynch which yielded zero body worn camera videos of the arrest of the plaintiff. Additionally, I confirmed that these officers were assigned body worn cameras on January 1, 2020 as well as the fact that these officers do not have the capability or authority to delete BWC footage they record.

8.  A second search was conducted including the date of arrest (January 1, 2020) an expanded search around the time of arrest (0200 x 0700), as well as all uniformed members of the service assigned to Squad 7 within the Emergency Services Unit, which Squad covers the area of occurrence.

9.  The above search yielded two (2) body-worn camera videos, recorded by Detectives Evan Nielsen and Patrick Graney, which had already been automatically deleted from evidence.com pursuant to the NYPD's body-worn camera retention policy. The retention policy, at this time, for body-worn camera videos not categorized as a homicide, arrest or summons by the recording officer was eighteen (18) months. Detectives Nielsen and Graney do not have the capability or authority to delete BWC footage they record.

_Alli Au_

**ALLISON ARENSON**

Dated: New York, NY
      November 7, 2022